IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-38

No. COA20-572

Filed 6 December 2022

Wake County, Nos. 09 CRS 211758-60, 211765

STATE OF NORTH CAROLINA

v.

GREGORY A. PERKINS, Defendant.

Appeal by Defendant from judgments entered 19 February 2020 by Judge Paul C. Ridgeway in Wake County Superior Court. First heard in the Court of Appeals 7 May 2014. Heard in the Court of Appeals again 21 June 2021.

> *Attorney General Joshua H. Stein, by Special Deputy Attorneys General Amy Kunstling Irene and Jonathan P. Babb, for the State.*
>
> *Jason Christopher Yoder for the Defendant.*

JACKSON, Judge.

¶ 1    This is this Court's fourth opinion in this case. On 1 July 2014, this Court issued an unpublished opinion finding no error in a 2012 trial that culminated in Gregory A. Perkins's ("Defendant") conviction of first-degree rape of a child, incest, and two counts of first-degree sexual offense. *See State v. Perkins*, 760 S.E.2d 38, 42 (2014) (unpublished) ("*Perkins I*"). On 21 July 2014, this Court entered an order withdrawing the 1 July 2014 opinion, directing the Clerk of our Court not to certify it, and retaining the cause for disposition by the original panel to which it had been

assigned. On 5 August 2014, this Court issued an amended opinion in the case, which was also unpublished. *See State v. Perkins*, 235 N.C. App. 425, 763 S.E.2d 928, 2014 WL 3824261 (2014) (unpublished) ("*Perkins II*"). This amended opinion also found no error in Defendant's trial, *see id.* at *4; however, it corrected an error in this Court's first opinion, omitting some of the analysis in the first opinion because it was erroneous. *Compare Perkins I*, 760 S.E.2d at 42 ("Defendant contends the trial court's use of his prior conviction to calculate his prior record level was prejudicial error, and cites *State v. West*, 180 N.C. App. 664, 638 S.E.2d 508 (2006), in support of his argument. . . . *West* is not applicable to the instant case[.]") *with Perkins II* at 3 ("Defendant contends the trial court's use of his prior conviction to calculate his prior record level was prejudicial error. However, defendant stipulated to his prior record level. . . . [D]efendant's stipulation [] to his prior record level was binding.").[1] The facts of this case are detailed in the Court's 5 August 2014 amended opinion, so we repeat only those necessary to understand the disposition of this appeal.

---

[1] In *State v. West*, 180 N.C. App. 664, 669, 638 S.E.2d 508, 512 (2006), the trial court counted a conviction as a prior conviction for sentencing even though the relevant charge had been joined for trial with the charge for which the defendant was being sentenced and thus could not have qualified as a prior conviction. We reasoned that "'[a] person has a prior conviction when, on the date a criminal judgment is entered, the person being sentenced has been *previously* convicted of a crime[,]" *id.* (quoting N.C. Gen. Stat. § 15A-1340.11(7)) (emphasis added), noting that while "[n]othing within the Sentencing Act specifically addresses the effect of joined charges when calculating previous convictions to arrive at prior record levels[,] . . . the assessment of a defendant's prior record level using joined convictions would be unjust and in contravention of the intent of the General Assembly." *Id.* at 669-70, 638 S.E.2d at 512. We therefore remanded the case for a resentencing.

## I.    Background

On 30 December 2016, Defendant filed a motion for appropriate relief ("MAR") in Wake County Superior Court alleging that he received ineffective assistance of counsel in his 2012 trial because his trial counsel stipulated that his prior record level was II rather than I based on a charge—a count of indecent liberties—that had been originally joined for trial with not only the four charges of which he was convicted in 2012, but also 15 others the State had previously voluntarily dismissed.[2]  The MAR court denied the MAR.

On 21 June 2017, Defendant petitioned our Court for a writ of certiorari to review the merits of the MAR court's order.  We granted the petition on 10 July 2017, vacating the MAR court's order, and remanding the case to the MAR court for reconsideration of the MAR and for Defendant to conduct post-conviction discovery. On 2 August 2018, the MAR court finally entered an order in which it concluded that trial counsel's stipulation that Defendant had a prior record level of II was erroneous but that counsel's error did not rise to the level of ineffective assistance of counsel.[3]

---

[2] Just over a year before the 2012 trial, Defendant had been tried for 20 counts of various sex crimes and the jury convicted him of only one—taking indecent liberties with a child—and was hung on the remaining 19.  Aside from the count of indecent liberties of which Defendant was convicted in 2011, the trial court declared a mistrial.  At the 2012 trial, the State elected to proceed on only the four charges of which Defendant was convicted in 2012.

[3] As previously noted, under *West*, 180 N.C. App. at 669, 638 S.E.2d at 512, a sentencing court cannot count a conviction as a *prior* conviction if the relevant charge was joined for trial with the charge for which the defendant is being sentenced.  The reason is

The MAR court therefore ordered a resentencing.

On 19 February 2020, Judge Paul C. Ridgeway resentenced Defendant. Correcting the trial court's error, and the error in this Court's two prior opinions, *see Perkins I*, 760 S.E.2d at 42; *Perkins II*, 2014 WL 3824261 at 3, Judge Ridgeway sentenced Defendant as a prior record level I offender rather than a prior record level II offender, but otherwise imposed four consecutive, presumptive-term sentences for the 2012 convictions, like the trial court had. Judge Ridgeway also entered orders on 19 February 2020 requiring Defendant to enroll in satellite-based monitoring ("SBM") for the rest of his life because of the 2012 convictions.

Defendant timely noted appeal from the judgments and on 14 December 2020 petitioned our Court for certiorari to review the SBM orders. On 18 January 2022, this Court issued its third opinion in this case, issuing the writ of certiorari to review the SBM orders per opinion. *See State v. Perkins*, 2022-NCCOA-38 (withdrawn) ("*Perkins III*"). Because the Court issued the writ of certiorari per opinion, it contemporaneously dismissed Defendant's petition for certiorari as moot by order. Nine days later, Defendant petitioned our Court for rehearing en banc or, in the alternative, moved that we stay the mandate and withdraw the 18 January 2022

---

that such a conviction does not qualify as a prior conviction. *Id. See also id.* ("[A]ssessment of a defendant's prior record level using joined convictions would be unjust and in contravention of the intent of the General Assembly."). *Id.* at 669-70, 638 S.E.2d at 512.

opinion. On 7 February 2022, we allowed Defendant's motion to withdraw the Court's third opinion and dismissed the petition for rehearing en banc without prejudice to any future petition for rehearing en banc Defendant might file after we issue this opinion.

## II.    Jurisdiction

The withdrawal of the Court's third opinion made the mooting of the petition for writ of certiorari to review the 2020 SBM orders itself moot. In our discretion and in order to "aid in [our] jurisdiction" we allow Defendants' 14 December 2020 petition for writ of certiorari. N.C. Gen. Stat. § 7A-32(c) (2021).[4]

The final judgments entered by the resentencing court on 19 February 2020 are otherwise properly before us under N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444.

In the exercise of our discretion, we issue the writ of certiorari. While Judge Tyson disagrees with that decision, a majority of the Court concurs in issuance of a writ of certiorari per opinion to review the 2020 orders. I am alone in reaching the merits of Defendant's arguments related to the 2020 SBM orders, however. Judge Murphy concurs in the issuance of certiorari but would hold the trial court lacked jurisdiction to enter the 2020 SBM orders and vacate them as set out in his separate opinion. I would hold that Defendant's arguments related to the 2020 SBM orders

---

[4] As a result of our exercise of jurisdiction, we need not address whether Defendant's written Notice of Appeal satisfied the requirements of Rule 3(a).

lack merit and affirm the orders.

### III.   Analysis

### A. Introduction

In light of the Court's decision to review the 2020 SBM orders, and the disagreement between my colleagues about whether the orders are properly before our Court, this case presents three questions:  first, are the indictments facially valid where they identified the victim using the victim's initials and date of birth?  Defendant argues in his brief to our Court that they are not.  We hold that they are.  The panel is unanimous in that holding.

The second question presented is whether the 2020 SBM orders are properly before the Court.  A majority of the Court agrees that they are, upon issuance of a writ of certiorari per opinion, in the exercise of our discretion.  *See* N.C. R. App. P. 21(a)(1) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of . . . orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]").

The third is whether the orders violated the Fourth Amendment.  I would hold that they did not, under our Supreme Court's decision in *State v. Hilton*, 378 N.C. 692, 2021-NCSC-115, 862 S.E.2d 806, and our Court's recent decisions interpreting and applying *Hilton* in *State v. Carter*, 2022-NCCOA-262 ¶¶ 18-20 and *State v. Anthony*, 2022-NCCOA-414 ¶¶ 24-32—decisions we are bound to follow as an

intermediate appellate court that cannot overrule itself—*see, e.g.*, *Upchurch v. Harp Builders, Inc.*, 2022-NCCOA-301 ¶ 11 ("[W]here a panel of this Court has decided a legal issue, future panels are bound to follow that precedent. This is so even if the previous panel's decision involved narrowing or distinguishing an earlier controlling precedent—even one from the Supreme Court[.]") (quoting *State v. Gonzalez*, 263 N.C. App. 527, 531, 823 S.E.2d 886, 888-89 (2019)). Neither of my colleagues would reach the issue of whether the orders violated the Fourth Amendment.

¶ 12        Their stated reasons differ. Judge Tyson would not issue a writ of certiorari simply because Defendant's Fourth Amendment arguments lack merit, and because Judge Tyson takes our Supreme Court's decision in *State v. Ricks*, 378 N.C. 737, 2021-NCSC-116, to be controlling here. In *Ricks*, the Supreme Court held that our Court abused its discretion when it reviewed an SBM order upon issuance of a writ of certiorari where the defendant's petition did not "show merit or that error was probably committed below." *Id.* at 743, 2021-NCSC-116 ¶ 11. Under *Ricks*, the jurisdictional question is thus not analytically prior to the merits of the appeal.

¶ 13        A majority of the Court agrees that this case is distinguishable from *Ricks* because of the nature of the division of the panel on the second question presented by the case. But my colleagues disagree about why we cannot review the merits of the 2020 SBM orders. While Judge Tyson argues doing so is an abuse of discretion under *Ricks* because Defendant's Fourth Amendment arguments lack merit, Judge Murphy

would hold that we lack subject matter jurisdiction to review the 2020 SBM orders—setting aside whether the arguments about them have merit—even upon issuance of a writ of certiorari, and even though Judge Murphy concurs in the *issuance* of the writ. In other words, Judge Murphy agrees to grant a writ that expands our jurisdiction to address the second issue raised by Defendant in his brief in order to express the view that we have no jurisdiction over the issue, even though issuance of the writ is what gives us jurisdiction over the issue. This is an unusual situation and one unlike *Ricks* in the view of the majority of the Court, which includes Judge Murphy.

¶ 14    In *Ricks*, our Court issued a writ of certiorari and invoked Rule 2 of the North Carolina Rules of Appellate Procedure to suspend the application of the Rules "[t]o prevent manifest injustice[,]" N.C. R. App. P. 2, and reviewed two SBM orders, *State v. Ricks*, 271 N.C. App. 348, 358, 843 S.E.2d 652, 661-62, *rev'd*, 378 N.C. 737, 2021-NCSC-116 (2020), something our Court had been doing as a matter of course for quite some time before the Supreme Court's decision in *Ricks*, *see State v. Barnes*, 278 N.C. App. 245, 247-50, 2021-NCCOA-304 ¶ 8-14; *State v. Sheridan*, 263 N.C. App. 697, 707-08, 824 S.E.2d 146, 154 (2019); *State v. Oxendine*, 206 N.C. App. 205, 209, 696 S.E.2d 850, 853 (2010), notwithstanding the view expressed frequently, if not entirely consistently, *Sheridan*, 263 N.C. App. at 707-08, 824 S.E.2d at 154, by Judge Tyson in this case, who was also the dissenting judge in *Ricks* when the case was at our

Court, *see, e.g.*, *Ricks*, 271 N.C. App. at 364-65, 843 S.E.2d at 666, (Tyson, J., dissenting) ("To trigger this Court's discretion to allow the petition and issue the writ, Defendant's 'petition for this writ of certiorari must show merit or that error was probably committed below.'") (marks omitted) (quoting *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959)). Judge Tyson's view prevailed at the Supreme Court in *Ricks*, however.

¶ 15        I would invoke Rule 2 and suspend the application of the North Carolina Rules of Appellate Procedure in this case "to prevent manifest injustice[,]" but the manifest injustice I wish to prevent is *not* the "harsh[] . . . result [that] application of our Appellate Rules . . . [results in] a defendant [being] deprived of any relief from a potentially unconstitutional order[.]" *State v. Cozart*, 260 N.C. App. 96, 104, 817 S.E.2d 599, 604 (2018) (Zachary, J., concurring).

¶ 16        Instead, the manifest injustice I would prevent by invoking Rule 2 to review the SBM orders and holding that they do not violate Defendant's Fourth Amendment rights is what my colleagues' project appears to be, though they disagree about the means to achieve it—which is to avoid following our Court's recent, controlling decisions in *Carter* and *Anthony*, even though that is what *In re Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989), *Gonzalez*, and *Upchurch*—controlling precedent from our Court—require. *See, e.g.*, *In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37 ("Where a panel of the Court of Appeals has decided the same issue, albeit in a

different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."); *Gonzalez*, 263 N.C. App. 527, 531, 823 S.E.2d at 888 ("This is so even if the previous panel's decision involved narrowing or distinguishing an earlier controlling precedent—even one from the Supreme Court—as was the case in *In re Civil Penalty*."); *Upchurch*, 2022-NCCOA-301 ¶ 12 (noting that our Court cannot overrule itself *unless* "two lines of irreconcilable precedent develop independently—meaning the cases never acknowledge each other or their conflict"). If my colleagues agreed on the means to achieve this end, the manifest injustice that would result would be the deliberate "creation of two lines of irreconcilable precedent[.]" *Gonzalez*, 263 N.C. App. at 531, 823 S.E.2d at 889.

¶ 17     Because (1) a majority of the Court issues a writ of certiorari to review the 2020 SBM orders per opinion; (2) *In re Civil Penalty*, *Gonzalez*, and *Upchurch* mean that our Court's interpretation and application of *Hilton* in *Carter* and *Anthony* control on the issue of whether the 2020 SBM orders violated Defendant's rights under the Fourth Amendment—even over the Supreme Court's decision in *Hilton* itself—*see Gonzalez*, 263 N.C. App. at 531, 823 S.E.2d at 888-89; (3) *Carter* holds that "[o]ur Supreme Court's decision in *Hilton* concluded that for aggravated offenders, [such as Defendant,] the imposition of lifetime SBM causes only a limited intrusion into [a] diminished privacy expectation[,]" 2022-NCCOA-262 ¶ 24, and therefore does not violate the Fourth Amendment; and (4) review of the reasonableness of an SBM order

is de novo, *id.* ¶ 14, I would hold that Defendant's Fourth Amendment rights were not violated by the 2020 SBM orders.

**B. The Indictments Are Facially Valid**

Defendant argues that the indictments are facially invalid because rather than identifying the victim by name, they identify the victim by the victim's initials and date of birth. We disagree. The panel is unanimous on this point.

"It is well settled that a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony." *State v. Campbell*, 368 N.C. 83, 86, 772 S.E.2d 440, 443 (2015) (internal marks and citation omitted). "The purpose of the indictment is to give a defendant reasonable notice of the charge against his so that he may prepare for trial." *Id.* (citation omitted). "[A]n indictment must allege all the essential elements of the offense . . . , but an indictment couched in the language of the statute is generally sufficient[.]" *State v. Mostafavi*, 370 N.C. 681, 685, 811 S.E.2d 138, 141 (2018) (cleaned up). An indictment is facially invalid only if it omits an element of the offense charged. *State v. Sechrest*, 277 N.C. App. 372, 375, 2021-NCCOA-204 ¶ 10.

Short-form indictments specifically authorized by statute are deemed facially valid, even if they omit an element of the offense charged, as long as they comply with the enabling statute. *See, e.g.*, *State v. Lowe*, 295 N.C. 596, 599-604, 247 S.E.2d 878, 881-84 (1978) (affirming the authority of the General Assembly "to relieve the State

of the common law requirement that every element of the offense be alleged"). Moreover, we have previously held that under N.C. Gen. Stat. §§ 15-144.1 and -144.2, short-form indictments charging the crimes of rape and statutory sexual offense using the victim's initials to identify the victim are facially valid. *State v. McKoy*, 196 N.C. App. 652, 657-58, 675 S.E.2d 409, 411-14, *disc. rev. denied*, 363 N.C. 586, 683 S.E.2d 215 (2009).

¶ 21 However, because a facially invalid indictment does not "confer subject-matter jurisdiction on the trial court[,]" *State v. Lyons*, 268 N.C. App. 603, 607, 836 S.E.2d 917, 920 (2019), (citation omitted), "[a] defendant can challenge the facial validity of an indictment at any time, and a conviction based on an invalid indictment must be vacated[,]" *Campbell*, 368 N.C. at 86, 772 S.E.2d at 443 (citation omitted). "[W]e review the sufficiency of an indictment *de novo*." *McKoy*, 196 N.C. App. at 652, 675 S.E.2d at 409.

¶ 22 The indictments charging Defendant with rape and statutory sexual offense identify the victim with greater precision than required by *McKoy* or N.C. Gen. Stat. §§ 15-144.1 and -144.2, the statutes authorizing the use of short-form indictments to charge rape and statutory sexual offense, because they include the victim's date of birth as well as the victim's initials. *McKoy* controls here and we hold that these indictments are facially valid. They provided Defendant with ample notice to prepare a defense, as well as adequately defining the offenses so that Defendant could plead

the verdicts in bar of any double jeopardy.

¶ 23      North Carolina General Statute § 14-178(a) defined incest at the relevant time in pertinent part here as the crime of a "person engag[ing] in carnal intercourse with the person's . . . legally adopted child[.]" N.C. Gen. Stat. § 14-178(a) (2008).

¶ 24      The indictment charging Defendant with incest avers in relevant part that

> on or about December 1, 2008 through December 31, 2008, . . . [Defendant] unlawfully, willfully and feloniously did have carnal intercourse with CBA (dob: [XX/XX/XXXX]), who is [] [Defendant's] stepchild and [] [Defendant] was aware that he was CBA's stepfather.

¶ 25      This indictment contains all of the elements of the offense, and the allegations hew carefully to the statutory definition of the crime. It too provided Defendant with ample notice to prepare a defense, as well as defining the offense sufficiently to prevent the risk of double jeopardy. We therefore hold that this indictment is facially valid as well.[5]

---

[5] The State argues that this issue is outside the scope of this appeal because it "goes beyond the limited scope of this Court's 10 July 2017 order remanding this case to the superior court for reconsideration of [D]efendant's MAR." While we are sympathetic to the intuition behind this argument—that Defendant is, on some level, getting a second bite at the apple by raising an argument in his second appeal to our Court that was not raised in the first—we note that both appeals were appeals of right, and there is no rule against what Defendant has done. In addition, because the facial validity of an indictment is a subject matter-jurisdictional requirement, *State v. Lyons*, 268 N.C. App. 603, 607, 836 S.E.2d 917, 920 (2019), "[a] defendant can challenge the facial validity of an indictment at any time," *State v. Campbell*, 368 N.C. 83, 86, 772 S.E.2d 440, 443 (2015) (citation omitted). It should be familiar learning that "the proceedings of a court without jurisdiction of the subject matter are a nullity, and without subject matter jurisdiction, a court has no power to act." *Boseman*

**C. The SBM Orders Are Properly Before Our Court**

¶ 26    Certiorari is one means available to appellate courts like ours to enlarge our jurisdiction.[6]  *See* N.C. R. App. P. 21(a)(1).  It is "a common law writ issuing from a superior court to an inferior court, . . . commanding it to send up the record of a particular case for review."  *Wheeler v. Thabit*, 261 N.C. 479, 480, 135 S.E.2d 10, 11 (1964) (citations omitted).  Issuance of the writ divests the lower court of jurisdiction over the matter.  *See id.* at 480-81, 135 S.E.2d at 11.  Certiorari is a discretionary writ, and as such, is "not one to which the moving party is entitled as a matter of right."  *Womble v. Moncure Mill & Gin Co.*, 194 N.C. 577, 579, 140 S.E. 230, 231 (1927).  "[D]iscretion in a legal sense means the power of free decision; undirected choice; the authority to choose between alternative courses of action."  *Burton v. City of Reidsville*, 243 N.C. 405, 407, 90 S.E.2d 700, 702 (1956).

¶ 27    In *Ricks*, relying on old cases that emphasized the importance of the

---

*v. Jarrell*, 364 N.C. 537, 548, 704 S.E.2d 494, 502 (2010) (cleaned up).  The State's argument that our consideration of this issue is barred by the doctrine of res judicata fails for the same reason.

    [6] Another is the express authorization the General Assembly has given us in N.C. Gen. Stat. § 7A-32(c), which confers "[t]he Court of Appeals [with] [] jurisdiction . . . to supervise and control the proceedings of . . . trial courts[.]"  N.C. Gen. Stat. § 7A-32(c) (2021).  Our Supreme Court has construed § 7A-32(c) to authorize "the appellate courts of this State in their discretion [to] review an order of the trial court, not otherwise appealable, when such review will serve the expeditious administration of justice or some other exigent purpose."  *Stanback v. Stanback*, 287 N.C. 448, 453-54, 215 S.E.2d 30, 34-35 (1975).  A third is our Court's precedent that Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure authorizes us to treat an appeal "as a petition for writ of certiorari[.]"  *Luther v. Seawell*, 191 N.C. App. 139, 142, 662 S.E.2d 1, 3 (2008).

underlying merit of a petition for certiorari to a court's decision to issue the writ, our Supreme Court held that our Court abused its discretion when it suspended the application of the Rules of Appellate Procedure under Rule 2 and reviewed two SBM orders upon issuance of a writ of certiorari where the defendant's petition did not "show merit or that error was probably committed below." *Id.* at 741, ¶ 6 (quoting *Grundler*, 251 N.C. at 189, 111 S.E.2d at 9 (citing *In re Snelgrove*, 208 N.C. 670, 672, 182 S.E. 335, 336 (1935)). The language of many of these old cases make issuance of a writ of certiorari seem like an extraordinarily difficult request to get a court to accede to indeed. *See, e.g., In re Snelgrove*, 208 N.C. at 671-72, 182 S.E. at 336 ("Certiorari is a discretionary writ, to be issued only for good or sufficient cause shown, and the party seeking it is required, not only to negative laches on his part in prosecuting the appeal, but also to show merit or that he has reasonable grounds for asking that the case be brought up and reviewed on appeal. Simply because a party has not appealed, or has lost his right of appeal, even through no fault of his own, is not sufficient to entitle him to a certiorari. A party is entitled to a writ of certiorari when–and only when–the failure to perfect the appeal is due to some error or act of the court or its officers, and not to any fault or neglect of the party or his agent. Two things, therefore, should be made to appear on application for certiorari: First, diligence in prosecuting the appeal, except in cases where no appeal lies, when freedom from laches in applying for the writ should be shown; and, second, merit, or

that probable error was committed on the hearing.") (cleaned up).

### 1. *The History of Rule Appellate Rule 21 Suggests that* Ricks *Was Wrongly Decided*

¶ 28        When the Rules of Appellate Procedure were first adopted on 13 June 1975, *see* 287 N.C. at 671, the language of Rule 21—which is virtually unchanged in the version of Rule 21 in effect today, except for the additions of subsection (e) in 1984, *see* 312 N.C. at 824, and subsection (f) in 1988, *see* 324 N.C. at 662—was, and today still is, much more obliging than the language of those old cases. *Compare* N.C. R. App. P. 21(a)(1) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of . . . orders of trial tribunals *when the right to prosecute an appeal has been lost by failure to take timely action*[.]") (emphasis added) *with In re Snelgrove*, 208 N.C. at 672, 182 S.E. at 336 ("Simply because a party has not appealed, *or has lost his right of appeal*, even through no fault of his own, *is not sufficient* to entitle him to a certiorari.") (emphasis added). Instead, Rule 21 provided, as it does today, *see* N.C. R. App. P. 21(a)(1), that "[t]he writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of . . . orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[,]" 287 N.C. at 728.

¶ 29        The Drafting Committee notes to Rule 21 explain that the Rule "establishes that certiorari may lie from either appellate court to permit review of trial tribunal

judgments when [an] ordinary appeal right has been lost or does not exist" and, "following traditional practice in the use of this *discretionary* writ, . . . the question of its timeliness in a particular case is to be determined as a part of the general question of its propriety as an extraordinary mode of review." *Id.* at 730 (emphasis added). The Drafting Committee notes add that the provisions of subsection (c) of Rule 21 that do not relate to timeliness, e.g., that "[t]he petition shall be filed without unreasonable delay[,]" N.C. R. App. P. 21(c), "elaborate upon the more sketchy descriptions of the practice contained in former Sup[erior] C[ourt] R[ule] 34[,]" 287 N.C. at 730, which refers to the good cause requirement that had to be met before a trial court could enter an order granting a motion to compel production of discovery prior to 1975, *Stanback v. Stanback*, 287 N.C. 448, 459, 215 S.E.2d 30, 38 (1975).

¶ 30 In 1975, the Rules of Appellate Procedure—and specifically, the operative language of Rule 21(a) that remains unchanged today—were adopted, and the previously existing good cause requirement of Rule 34 of the North Carolina Rules of Civil Procedure was removed. *See* 287 N.C. at 671; 1975 S.L. 762 § 2. The Official Commentary to Rule 34 of the North Carolina Rules of Civil Procedure explains that "[t]he overwhelming proportion of the cases in which the formula of good cause ha[d] been applied . . . [we]re those involving trial preparation" and that courts had not been properly "treat[ing] documents as having . . . immunity to discovery[,]" so with the adoption of the new provisions of the Rules of Civil Procedure in 1975 "to govern

trial preparation materials and experts, there [was] no longer any occasion to retain the requirement of good cause" in Rule 34. N.C. Gen. Stat. § 1A-1, Rule 34 (2021) (off. cmt.). Thus, according to the Official Commentary to Rule 34, a reduced need for safeguards against the wrongful disclosure of material protected by the work product doctrine was the reason the good faith requirement was no longer needed in Rule 34.

¶ 31 The difference between the text of Rule 21 of the Rules of Appellate Procedure and the language of old cases like *Snelgrove* and *Grundler* our Supreme Court relied upon in holding that we abused our discretion by reviewing the SBM orders at issue in *Ricks* is the same requirement of good cause the General Assembly eliminated from Rule 34 of the Rules of Civil Procedure in 1975, the same year the Rules of Appellate Procedure were adopted. *See* 1975 S.L. 762 § 2; 287 N.C. at 671. While the bodies that made these changes were different—the Drafting Committee drafted the Rules of Appellate Procedure and our Supreme Court approved them, *see* 287 N.C. at 671— and the General Assembly adopted Session Law 1975-762, *see* 1975 S.L. 762—it seems a fair inference that the drafters of Rule 21 of the Rules of Appellate Procedure and our Supreme Court in adopting Rule 21 in 1975 intended to discard, rather than retain, the good cause requirement for issuance of a writ of certiorari the old cases relied upon by our Supreme Court in *Ricks* suggests existed prior to the adoption of the Rules of Appellate Procedure in 1975.

¶ 32 The reason is that certiorari is a *discretionary* writ and the express language

of the version of Rule 21 adopted by the Supreme Court in 1975 is flatly inconsistent

with the language of the old cases predating its adoption. *See, e.g.*, 287 N.C. at 728

("The writ of certiorari may be issued in appropriate circumstances by either

appellate court to permit review of . . . orders of trial tribunals *when the right to

prosecute an appeal has been lost by failure to take timely action*[.]") (emphasis added);

*In re Snelgrove*, 208 N.C. at 672, 182 S.E. at 336 ("Simply because a party has not

appealed, *or has lost his right of appeal*, even through no fault of his own, *is not

sufficient* to entitle him to a certiorari.") (emphasis added).

¶ 33        Since the best evidence of the inference that the drafters of Rule 21 of the Rules

of Appellate Procedure and our Supreme Court in adopting Rule 21 in 1975 intended

to discard, rather than retain, the good cause requirement for issuance of a writ of

certiorari is the language the drafters chose and the Supreme Court approved in

1975—which is unchanged today—the Supreme Court in *Ricks* should have applied

Rule 21 as it is written rather than as it had described the writ of certiorari in an

opinion that predated the adoption of Rule 21 by 40 years.  Rule 21 provides that

"[t]he writ of certiorari may be issued in *appropriate* circumstances by either

appellate court to permit review of . . . orders of trial tribunals when the right to

prosecute an appeal has been lost by failure to take timely action[.]"  N.C. R. App. P.

21(a)(1) (emphasis added).  *See also* 287 N.C. at 728 ("The writ . . . may be issued in

*appropriate* circumstances . . . when the right to prosecute an appeal has been lost by

failure to take timely action[.]") (emphasis added). "Appropriate" means "right for the purpose; suitable; fit; proper[.]" *Appropriate*, Webster's New World College Dictionary 70 (5th ed. 2014).

¶ 34          We should first "look to the plain meaning of the [words of Rule 21] to ascertain [our Supreme Court's] intent." *Town of Boone v. State*, 369 N.C. 126, 132, 794 S.E.2d 710, 715. *See also* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation. It governs constitutions, statutes, rules, and private instruments. Interpreters should not be required to divine arcane nuances or to discover hidden meanings."). "Because the actual words used" by the drafters and adopted by our Supreme Court "are the clearest manifestation of [their] intent, we [should] give every word . . . effect, presuming . . . [each word was] carefully chose[n.]" *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) (citation omitted). As the Drafting Committee notes to Rule 21 explain, the Rule "follow[s] traditional practice in the use of this *discretionary* writ[.]" 287 N.C. at 730 (emphasis added). "Discretion" is "the power of free decision; undirected choice; the authority to choose between alternative courses of action." *Burton*, 243 N.C. at 407, 90 S.E.2d at 702.

¶ 35          We also must be mindful of the longstanding presumption that the lawmakers in 1975 were "fully cognizant of prior and existing law within the subject matter of

[their] enactment." *Biddix v. Henredon Furniture Indus., Inc.*, 76 N.C. App. 30, 34, 331 S.E.2d 717, 720 (1985) (citation omitted). In doing so, we must bear in mind "the long-standing rules of interpretation and construction . . . [,] *expressio unius est exclusio alterius*, [i.e.,] the expression of one thing is the exclusion of another." *Mangum v. Raleigh Bd. of Adjustment*, 196 N.C. App. 249, 255, 674 S.E.2d 742, 747 (2009). "*Expressio unius*, also known as *inclusio unius*, is . . . the communicative device known as negative implication." Scalia & Garner, *supra*, at 107. Although "application of the *expressio unius* canon depends . . . on context," *Cooper v. Berger*, 371 N.C. 799, 810, 822 S.E.2d 286, 296 (2018) (internal marks and citation omitted), "[t]he doctrine properly applies [] when the *unius* (or technically, *unum*, the thing specified) can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved[,]" Scalia & Garner, *supra*, at 107.

¶ 36        I do not believe it is a stretch to infer from the elimination of the good cause requirement in Rule 45 of the Rules of Civil Procedure in 1975 in the "rewrit[ing] [of] the Rules of Civil Procedure [g]overning [d]iscovery and [d]epositions[,]" 1975 S.L. 762 (title), and the absence of a good cause requirement in the text of Rule 21 of the Rules of Appellate Procedure adopted by our Supreme Court that same year, *see* 287 N.C. at 671, that the drafters of Rule 21 in drafting Rule 21 and our Supreme Court in adopting it intended to eliminate the good cause requirement for issuance of a writ of certiorari suggested in such demanding terms by the old cases relied upon by the

Supreme Court in *Ricks*. To my mind, the "*unum*, the thing specified[,]" that is, the rules of court applicable in North Carolina in 1975, including not only the Rules of Civil Procedure, but also the Rules of Appellate Procedure, "can reasonably be thought to [have] be[en] an expression of *all* that shares in the . . . [elimination] involved[,]" Scalia & Garner, *supra*, at 107, that is, the good cause requirement articulated in such demanding terms by the Supreme Court in *Snelgrove*, which was decided 40 years before Rule 21 of the Rules of Appellate Procedure was adopted.

### 2. Ricks *Was a Sharp Rebuke of a Decade-Long Practice of Our Court*

¶ 37 To promote judicial economy and avoid the "harsh[] . . . result [of] . . . a defendant [being] deprived of [] relief from a potentially unconstitutional order[.]" *Cozart*, 260 N.C. App. at 104, 817 S.E.2d at 604 (Zachary, J., concurring), our Court had routinely and efficiently been issuing writs of certiorari and suspending the Rules of Appellate Procedure under Rule 2 in cases involving SBM orders that had not been properly appealed prior to our Supreme Court's decision in *Ricks*. *See Barnes*, 278 N.C. App. at 247-50, 2021-NCCOA-304 ¶ 8-14; *Sheridan*, 263 N.C. App. at 707-08, 824 S.E.2d at 154; *Oxendine*, 206 N.C. App. at 209, 696 S.E.2d at 853. Rule 2 authorizes our Court to "suspend or vary the requirements or provisions" of the North Carolina Rules of Appellate Procedure "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest, . . . in a case pending before [us] upon

application of a party or upon [our] own initiative," allowing us to "order proceedings in accordance with [our] directions." N.C. R. App. P. 2.

¶ 38       The reason SBM orders are frequently not properly appealed is the idiosyncratic requirement that an SBM order be appealed in writing because it is considered civil rather than criminal in nature, *State v. Brooks*, 204 N.C. App. 193, 194-95, 693 S.E.2d 204, 206 (2010), while appeal from the judgment entered upon the jury's verdict containing the rest of a particular offender's sentence can be noticed in open court, N.C. R. App. 4(a)(1). In virtually every case in which our Court had been suspending the Rules of Appellate Procedure under Rule 2 and reviewing an improperly appealed SBM order upon issuance of a writ of certiorari prior to our Supreme Court's decision in *Ricks*, the reason appeal had not been properly noticed from the SBM order was that defense counsel had neglected to enter written notice of appeal of the SBM order separately from the oral notice of appeal counsel gave in open court after the trial court sentenced the defendant. *See, e.g.*, *Barnes*, 278 N.C. App. at 247-48, 2021-NCCOA-304 ¶ 9 ("Because of the civil nature of SBM hearings, a defendant must file a written notice of appeal from an SBM order pursuant to Appellate Rule 3. . . . In the present case, because [the] defendant's oral notice of appeal was insufficient to confer jurisdiction on this Court . . . , defendant filed a petition for a writ of certiorari . . . seeking review of the order imposing lifetime enrollment in SBM."); *Sheridan*, 263 N.C. App. at 707, 824 S.E.2d at 154 ("Defendant

did not file written notice of appeal for the SBM determination, as required by N.C. R. App. P. 3. Defendant filed a petition for writ of certiorari, requesting this Court to consider his arguments on the merits."); *Oxendine*, 206 N.C. App. at 209, 696 S.E.2d at 853 ("We note that [the] defendant gave oral notice of appeal at the SBM hearing from the trial court's final order. . . . [D]efendant's oral notice of appeal is insufficient to confer jurisdiction on this Court. . . . However, . . . we *ex mero motu* treat [the] defendant's brief as a petition for certiorari and grant said petition to address the merits of defendant's appeal.").

¶ 39        *See also State v. Mack*, 277 N.C. App. 505, 515, 2021-NCCOA-215 ¶ 30-31; *State v. Gordon*, 278 N.C. App. 119, 124, 2021-NCCOA-273 ¶ 15; *State v. Robinson*, 275 N.C. App. 876, 886, 854 S.E.2d 407, 413 (2020); *State v. Mangum*, 270 N.C. App. 327, 333-34, 840 S.E.2d 862, 867-68 (2020); *State v. Thompson*, 273 N.C. App. 686, 689, 852 S.E.2d 365, 369 (2020); *State v. Hutchens*, 272 N.C. App. 156, 159-60, 846 S.E.2d 306, 310 (2020); *State v. Perez*, 275 N.C. App. 860, 864-65, 854 S.E.2d 15, 20 (2020); *State v. Lopez*, 264 N.C. App. 496, 503-04, 826 S.E.2d 498, 503-04 (2019); *State v. Harding*, 258 N.C. App. 306, 320, 813 S.E.2d 254, 265 (2018); *State v. Lindsey*, 260 N.C. App. 640, 642, 818 S.E.2d 344, 346 (2018); *State v. Martinez*, 253 N.C. App. 574, 585 n.7, 801 S.E.2d 356, 363 n.7 (2017); *State v. Dye*, 254 N.C. App. 161, 167-68, 802 S.E.2d 737, 741 (2017); *State v. Shore*, 255 N.C. App. 420, 424, 804 S.E.2d 606, 609 (2017); *State v. Springle*, 244 N.C. App. 760, 762-64, 781 S.E.2d 518, 520-21 (2016);

*State v. Robinson*, 249 N.C. App. 568, 571-72, 791 S.E.2d 862, 865 (2016); *State v. Harris*, 243 N.C. App. 728, 732, 778 S.E.2d 875, 878 (2015); *State v. Hicks*, 239 N.C. App. 396, 400, 768 S.E.2d 373, 375-76 (2015); *State v. Green*, 229 N.C. App. 121, 128, 746 S.E.2d 457, 464 (2013); *State v. Lineberry*, 221 N.C. App. 241, 242, 726 S.E.2d 205, 206-07 (2012); *State v. Brown*, 211 N.C. App. 427, 441 n.7, 710 S.E.2d 265, 275 n.7 (2011); *State v. Mann*, 214 N.C. App. 155, 157, 715 S.E.2d 213, 215 (2011); *State v. Towe*, 210 N.C. App. 430, 434, 707 S.E.2d 770, 774 (2011); *State v. Stokes*, 216 N.C. App. 529, 537-38, 718 S.E.2d 174, 180 (2011); *State v. Green*, 211 N.C. App. 599, 600-01, 710 S.E.2d 292, 294 (2011); *State v. Clark*, 211 N.C. App. 60, 70-71, 714 S.E.2d 754, 761-62 (2011); *State v. Sprouse*, 217 N.C. App. 230, 238-39, 719 S.E.2d 234, 241 (2011); *State v. May*, 207 N.C. App. 260, 262, 700 S.E.2d 42, 44 (2010); *State v. Williams*, 207 N.C. App. 499, 501, 700 S.E.2d 774, 775 (2010); *State v. Cowan*, 207 N.C. App. 192, 195-96, 700 S.E.2d 239, 241-42 (2010); *State v. Clayton*, 206 N.C. App. 300, 302-03, 697 S.E.2d 428, 430-31 (2010); *State v. Brooks*, 204 N.C. App. 193, 194-95, 693 S.E.2d 204, 206 (2010).

### 3. *Some of the Consequences of* Ricks *May Not have Been Intended*

¶ 40　　　　*Ricks* expresses a judgment that our Court's permissive invocation of Rule 2 and generosity in issuing writs of certiorari to review SBM orders had been excessive over the roughly ten-year course of that practice of our Court documented above. *See, e.g.*, 378 N.C. at 742, 2021-NCSC-116 ¶ 10 ("Defendant is no different from other

defendants who failed to preserve their constitutional arguments."). And perhaps it had been. Yet, the Supreme Court's holding in *Ricks* has had—and will continue to have—a tremendous practical impact at our Court, which may not have been intended. For *Ricks* is understood to hold not just that the jurisdictional question is *not* analytically prior to the merits of the appeal in a case where an SBM order has not been properly appealed; instead, it is understood to hold that the jurisdictional question is not analytically prior to the merits of the appeal in *all* cases. And that understanding has created conditions favorable to the proliferation of a shadow docket at our Court, and a shadow docket at our Court has proliferated because of *Ricks*.

¶ 41        In a shadow docket, a court enters "a range of orders and summary decisions that defy its normal procedural regularity." William Baude, *Foreword: The Supreme Court's Shadow Docket*, 9 N.Y.U. J. L. & Liberty 1 (2015). Shadow dockets have recently increasingly become the subject of criticism among members of the legal profession and even the general public because the summary disposition of cases in a shadow docket suffers from a lack of transparency. *See id.* The reason is simple: for most everyone, they are black boxes; nobody knows what goes on inside them, and that undermines public confidence in the results they produce.

¶ 42        The proliferation of a shadow docket at our Court also has troubling implications for North Carolinians because in North Carolina, except in exceptional

appeals—namely, capital appeals, business court appeals, and class action certification appeals, N.C. Gen. Stat. § 7A-27(a) (2021)—a North Carolinian's right to an appeal of right to our Supreme Court generally depends on whether there was a dissent at our Court in the appellant's first appeal of right, *id.* § 7A-30(2). Although there is an exception from this rule for appeals "that directly involve[] a substantial question arising under the Constitution of the United States or of this State[,]" and the Supreme Court always enjoys the power to review any appeal in its discretion, *id.* § 7A-31(a), generally speaking, an appellant in North Carolina does not have an appeal of right to our Supreme Court unless there is division among the judges of our Court and one of the judges on the three-judge panel assigned to decide the case at our Court authors a dissent, *see id.* § 7A-30(2).

¶ 43      If the jurisdictional question is not analytically prior to the merits of the appeal, as it now no longer is because of our Supreme Court's decision in *Ricks*, then there is a category of cases that will be dismissed by our Court based on the analysis in *Ricks* that would have been the same cases where the appellant had an appeal of right to our Supreme Court before *Ricks* was decided. The shadow docket at our Court after *Ricks* is populated by these cases. See, for example, below, a picture of the first page of an order deciding a case on the shadow docket of our Court that now exists because of *Ricks*. Before *Ricks* was decided, the defendant in that case would have unquestionably enjoyed an appeal of right to our Supreme Court under N.C.

Gen. Stat. § 7A-30(2). After *Ricks*, however, it is less clear if this same defendant has such a right.

¶ 44    Orders like the one below also are difficult to access—even for members of the legal profession, let alone by the general public—because they are not available in popular legal research databases and a person interested in reviewing such an order needs to know the case number to access the order on the Court's website.



**North Carolina Court of Appeals**

EUGENE H. SOAR, Clerk

Fax: (919) 831-3615
Web: https://www.nccourts.gov

Court of Appeals Building
One West Morgan Street
Raleigh, NC 27601
(919) 831-3600

Mailing Address:
P. O. Box 2779
Raleigh, NC 27602

From New Hanover
( 20CRS51122  20CRS51123  20CRS51124 )

No. 21-144

STATE OF NORTH CAROLINA

v.

JAQUALYN ROBINSON

O R D E R

The following order was entered:

The motion filed in the cause by the State on 6 July 2021 and designated 'Motion to Dismiss Appeal' is allowed. Defendant's appeal is dismissed. Defendant's 24 March 2021 'Petition for Writ of Certiorari' is denied. Appellant to pay costs.

Panel consisting of Judge MURPHY, Judge GRIFFIN, and Judge JACKSON.

JACKSON, Judge, dissenting.

Jaqualyn Robinson ('Defendant') appeals from an order denying his motion to suppress evidence entered by the Honorable R. Kent Harrell on 29 October 2020 in New Hanover County Superior Court. The majority denies Defendant's Petition for Writ of Certiorari and grants the State's Motion to Dismiss Appeal because they do not find merit in Defendant's argument on appeal. I believe Defendant's argument has merit and would grant his Petition for Writ of Certiorari and reach the meritorious issue. Therefore, I respectfully dissent.

I. Factual and Procedural Background

On 5 February 2020, Wilmington Police Department Officer B. Galluppi ('Officer Galluppi') conducted a traffic stop on a Chrysler 300 being driven by Defendant because the car's window tint was too dark. While speaking with Defendant through the driver's side window, Officer Galluppi 'detect[ed] a very faint odor of marijuana . . . coming from inside the vehicle.' After running Defendant's registration, Officer Galluppi had Defendant step out of the Chrysler and sit in Officer Galluppi's patrol car 'due to [his] experience with people who have partaken with [sic] marijuana[,]' Officer Galluppi did not want Defendant to tamper with any evidence inside the car. Officer Galluppi next ran Defendant's license and learned it was suspended.

While discussing the circumstances of his license suspension with Defendant, Officer Galluppi 'could still smell the odor of marijuana coming from his person at that point.' Officer Galluppi asked Defendant if there was a reason his vehicle smelled like marijuana. Defendant told Officer Galluppi 'that he didn't smoke or do anything or have anybody inside his vehicle for that.' (The trial court granted Defendant's motion to suppress these statements as the trial court found that placing Defendant in the patrol car constituted a custodial interrogation and Defendant should have been Mirandized.) After this exchange, Officer Galluppi then searched the vehicle while another officer remained with Defendant and Defendant was subsequently arrested.

¶ 45  Nevertheless, a majority of the Court in this case issues a writ of certiorari.

*Ricks* is therefore distinguishable from this case in my view because of the nature of

the division of the Court on both the second and third issues presented in this case, with each judge writing an opinion *in seriatim* because none agrees with the other. While Judge Tyson believes *Ricks* controls here, a majority of the Court holds that this case is distinguishable from *Ricks* because of the nature of the division of the Court. *Ricks* involved a more straightforward voting breakdown, with two judges in full agreement in the majority and Judge Tyson dissenting. Because of the lack of agreement among the judges of this panel on the second and third issues in the case, Judge Murphy and I issue a writ of certiorari on behalf of the Court to review the 2020 SBM orders.

**D. *Carter* Requires Us to Affirm the 2020 Orders**

¶ 46      I would invoke Rule 2 and suspend the application of the North Carolina Rules of Appellate Procedure to review the SBM orders and hold that they do not violate Defendant's Fourth Amendment rights. Our Court's recent decisions in *Carter* and *Anthony* hold that review of the reasonableness of an SBM order is de novo, 2022-NCCOA-262 ¶ 14; 2022-NCCOA-414 ¶ 9, and "that the SBM statute as applied to aggravated offenders [such as Defendant, all of whose four convictions at issue in this appeal qualify as aggravated offenses under N.C. Gen. Stat. § 14-208.6,] is not unconstitutional[,]" 2022-NCCOA-262 ¶ 18. I would therefore affirm the 2020 SBM orders.

¶ 47      I concede that the reasonableness of the 2020 SBM orders has not been

preserved for appellate review as required by precedent from our Court, *Cozart*, 260 N.C. at 101, 817 S.E.2d at 603, and our Supreme Court, *Ricks*, 2021-NCSC-116 ¶ 10, because Defendant's MAR counsel did not dispute the reasonableness of Defendant being required to enroll in lifetime SBM at the 2020 resentencing. This is not entirely surprising based on Defendant's age at the time of the resentencing hearing, however: the resentencing court's decision whether to impose consecutive, presumptive-term sentences for the convictions like the trial court had, but with a correct prior record level calculation, or to instead impose concurrent sentences for the convictions was the difference between Defendant ever being released from prison or not. It is not surprising then that Defendant's MAR counsel did not dispute the reasonableness of the resentencing court's decision to order Defendant to enroll in lifetime SBM after the resentencing court had decided to impose consecutive, presumptive-term sentences for the convictions like the trial court had and *not* run the four sentences concurrently: being required to enroll in lifetime SBM matters little to someone who is never getting out of prison.

¶ 48      Fully cognizant that I am "tak[ing] *two* extraordinary steps to reach the merits[,]" *State v. Bishop*, 255 N.C. App. 767, 768-69, 805 S.E.2d 367, 369 (2017) (emphasis in original), and entirely persuaded that "[f]undamental fairness . . . depend[s] upon the consistent exercise" of our Court's discretion to take "the extraordinary step of suspending the operation of the appellate rules[,]" *State v. Hart*,

361 N.C. 309, 317, 644 S.E.2d 201, 206 (2007), I would invoke Rule 2 to review the constitutionality of the 2020 orders because, as noted above, it appears to me that my colleagues intend to avoid following our Court's recent, controlling decisions in *Carter* and *Anthony*, even though that is what *In re Civil Penalty*, *Gonzalez*, and *Upchurch* require. *See In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37; *Gonzalez*, 263 N.C. App. at 531, 823 S.E.2d at 888; *Upchurch*, 2022-NCCOA-301 ¶ 12. As noted above, if my colleagues agreed on the means to achieve this end, the manifest injustice that would result would be the deliberate "creation of two lines of irreconcilable precedent[.]" *Gonzalez*, 263 N.C. App. at 531, 823 S.E.2d at 889.

¶ 49 In my view, this is not a situation where "similarly situated litigants are permitted to benefit from [Rule 2] but others are not[,]" *Bishop*, 255 N.C. App. 767, 770, 805 S.E.2d 367, 370, because as to Defendant, the outcome of our Court's resolution of this third and final issue presented by this appeal would be the same if any of the judges' opinions were the opinion of the Court: (1) I would affirm the 2020 orders because *Carter* requires that result (while suspending the rules to review an unpreserved constitutional argument to prevent *In re Civil Penalty* from being violated); (2) Judge Tyson would dismiss this portion of the appeal, leaving the 2020 orders in effect; and (3) Judge Murphy would hold that the trial court lacked jurisdiction to enter the 2020 SBM orders and they should be vacated, as the 2012 orders are still in effect today. Thus, no litigant situated similarly to Defendant

would benefit any more or less than Defendant from my invocation of Rule 2 here because not even Defendant benefits from it.

¶ 50 But our law does. As noted above, *In re Civil Penalty* means that our Court's interpretation and application of *Hilton* in *Carter* controls on the issues of whether the 2020 SBM orders violated Defendant's rights under the Fourth Amendment and whether review of preserved challenges to the reasonableness of lifetime SBM orders is de novo, 2022-NCCOA-262 ¶ 14, and *Carter* holds that "[o]ur Supreme Court's decision in *Hilton* concluded that for aggravated offenders, [such as Defendant,] the imposition of lifetime SBM causes only a limited intrusion into [a] diminished privacy expectation[,]" 2022-NCCOA-262 ¶ 24, and therefore does not violate the Fourth Amendment, ¶ 18. As North Carolina's intermediate appellate court, we must follow our prior decisions, *Upchurch*, 2022-NCCOA-301 ¶ 11, unless "two lines of irreconcilable precedent develop . . . [that] never acknowledge each other or their conflict[,]" ¶ 12, as would be true if Judge Murphy's separate opinion were a majority opinion.

### 4. *The Separate Opinions*

¶ 51 Judge Tyson's opinion reads *Ricks* too broadly. As noted above, I believe that this case is distinguishable from *Ricks* and Judge Murphy concurs in issuing a writ of certiorari in this case per opinion. Also as previously noted, I believe that the history of Rule 21 suggests that *Ricks* was wrongly decided, and that *Ricks* has had

negative—and perhaps, unintended—consequences, creating a shadow docket at our Court.

¶ 52      I must also conclude that Judge Murphy's conclusion that the trial court lacked jurisdiction to enter the 2020 SBM orders is erroneous. Judge Murphy cites our Court's decision in *State v. Clayton*, 206 N.C. App. 300, 697 S.E.2d 428 (2010), in support of this conclusion. This conclusion, however, appears to be based on a serious misreading of *Clayton*.

¶ 53      *Clayton* involved an offender who a trial judge purported to order to enroll in SBM for ten years on the basis of a *probation violation*, 206 N.C. App. at 301-02, 697 S.E.2d at 430, when the statute that authorizes trial courts to enter SBM orders only does so upon an offender's *conviction* "of a reportable *conviction* as defined by G.S. 14-208.6(4)[.]" N.C. Gen. Stat. § 14-208.40B(a) (2008) (emphasis added). *See also* N.C. Gen. Stat. § 14-208.40B(a) (2021) (same). At the risk of stating the obvious, probation violations are not and were not included in the list of reportable convictions contained in § 14-208.6(4), *see* N.C. Gen. Stat. § 14-208.6(4) (2021); N.C. Gen. Stat. § 14-208.6(4) (2008), because probation violations are not *crimes*, *see, e.g.*, *State v. Sparks*, 362 N.C. 181, 187, 657 S.E.2d 655, 659 (2008) ("[A] proceeding to revoke probation is not a criminal prosecution.") (internal marks and citation omitted). Although refraining from committing additional crimes is a regular condition of probation in North Carolina, N.C. Gen. Stat. § 15A-1343(b)(1) (2021), "a probation violation is not a crime

in itself," *Clayton*, 206 N.C. App. at 305, 697 S.E.2d at 432.

¶ 54        Probation revocation hearings are frequently described as informal and summary*, Sparks*, 362 N.C. at 187, 657 S.E.2d at 659, where the North Carolina Rules of Evidence do not apply, *State v. Murchison*, 367 N.C. 461, 464, 758 S.E.2d 356, 358 (2014).  Unlike at a criminal trial, at a probation revocation hearing, "the alleged violation . . . need not be proven beyond a reasonable doubt" and all that is required instead is "that the evidence be such as to reasonably satisfy the judge in the exercise of h[er] sound discretion that the defendant has willfully violated a valid condition of probation." *Id.* (internal marks and citations omitted).  "Accordingly, the decision of the trial court is reviewed for abuse of discretion." *Id.* (citation omitted).

¶ 55        Writing for our Court in *Clayton*, Judge, now Chief Judge, Donna Stroud reasoned that in the absence of any indication in the record that there had been compliance with the notice requirements of N.C. Gen. Stat. § 14-208.40B—the statute authorizing trial courts to enter orders requiring offenders to enroll in SBM—or any of the findings of fact in the order at issue that are required by that statute, and more fundamentally, because "a probation violation is not a crime . . . , much less a 'reportable conviction[,]'" the trial court in that case lacked jurisdiction either to conduct the hearing or to order the defendant to enroll in SBM for ten years.  206 N.C. App. at 305-06, 697 S.E.2d at 432-33.

¶ 56         *Clayton* was thus a straightforward application of the timeworn principle that where jurisdiction is statutorily conferred—as it is in the probation revocation context as well as the SBM context—a court cannot run afoul of its statutory remit, and when it does so, the extent of the excess is a nullity. *Wooten*, 194 N.C. App. at 527, 669 S.E.2d at 750. Judge Murphy reads *Clayton* as standing for a much broader proposition—that a trial court lacks jurisdiction to order an offender to enroll in SBM at any sentencing hearing other than the first sentencing that occurs after the offender is found guilty of a reportable offense and the original SBM order has not been specifically set aside. Judge Murphy's theory is that an SBM order does not qualify as a "sentence."

¶ 57         I disagree with this theory. For one, it was not the rationale for our Court's holding in *Clayton*, nor is it compelled or even supported by *Clayton*. Second, it does not follow from our Supreme Court's holding that "the SBM program . . . is not punitive in purpose or effect[,]" *State v. Bowditch*, 364 N.C. 335, 336, 700 S.E.2d 1, 2 (2010), as Judge Murphy suggests. *See, e.g.*, *infra*, at ___ ("As SBM is not a criminal sentence of punishment resulting from criminal judgment, but is instead a 'civil, regulatory scheme,' I conclude the trial court did not vacate the 2012 SBM orders by vacating Defendant's sentence.") (citations omitted).

       a. *North Carolina Law Embraces an Expansive View of the Purposes and Kinds of Sentences Offenders Can Face in State Court*

¶ 58        The word "sentence" is a broad one.  It is true that it has been defined as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty" or "the punishment imposed on a criminal wrongdoer."  *Sentence*, Black's Law Dictionary (11th ed. 2019).  But not all sentences a criminal defendant can face in state court in North Carolina are solely punitive in nature—some are remedial, at least in part.  *See, e.g.*, N.C. Gen. Stat. § 15A-1340.34(a) (2021) ("When sentencing a defendant convicted of a criminal offense, the court shall determine whether the defendant shall be ordered to make restitution to any victim of the offense in question.").  In other words, Judge Murphy's theory that an SBM order cannot be a sentence because our Supreme Court has held that the SBM program is not punitive draws an equivalence between something definitionally qualifying as a sentence and having a purely punitive purpose, which excludes a sentence—restitution—from qualifying as a sentence—when a trial court is required to consider it as a sentence under N.C. Gen. Stat. § 15A-1340.34(a) in every criminal case in North Carolina resulting in conviction.  *See id.*

¶ 59        Our General Assembly has not taken the narrow view of what the word "sentence" means that Judge Murphy's separate opinion does.  Section 15A-1340.12 of the General Statutes articulates four, interrelated yet distinct purposes of sentencing in criminal cases in state court in North Carolina:

>        [(1)] impos[ing] a punishment commensurate with the

injury the offense has caused, taking into account factors
that may diminish or increase the offender's culpability;

[(2)] protect[ing] the public by restraining offenders;

[(3)] assist[ing] the offender toward rehabilitation and
restoration to the community as a lawful citizen; and

[(4)] provid[ing] a general deterrent to criminal behavior.

N.C. Gen. Stat. § 15A-1340.12 (2021). Judge Murphy's separate opinion ignores the clearly expressed intent of the General Assembly in § 15A-1340.12 by insisting that the only purpose of a sentence can be punishment and if the SBM program does not qualify as punishment then it cannot be a sentence. But that insistence ignores codified evidence of legislative intent to the contrary.

¶ 60 Consistent with the third purpose of sentencing in North Carolina articulated by our General Assembly in N.C. Gen. Stat. § 15A-1340.12, some sentences imposed by North Carolina trial courts have purely rehabilitative purposes, or at least the potential to be purely rehabilitative. As our Court has held, the purpose of suspending an offender's sentence and imposing a sentence of probation is "to further the reform of the defendant." *State v. Simpson*, 25 N.C. App. 176, 180, 212 S.E.2d 566, 569 (1975). Section 15A-1343(b1) of the General Statutes authorizes trial courts to sentence offenders to probation that includes special conditions of probation in addition to the regular conditions of probation, such as receiving medical or psychiatric treatment, "[a]ttend[ing] or resid[ing] in a facility providing

rehabilitation, counseling, treatment, social skills, or employment training, instruction, recreation, or residence[,]" participating in rehabilitative treatment for sexual abuse in cases where evidence exists of "physical, mental or sexual abuse of a minor[,]" or "[s]atisfy[ing] [] other conditions determined by the court to be reasonably related to [the offender's] *rehabilitation.*" N.C. Gen. Stat. § 15A-1343(b1)(1), (2), (9), (10) (2021) (emphasis added).

¶ 61      According to Judge Murphy's theory of what qualifies as a sentence, an offender sentenced to one of the special conditions of probation listed above has not been sentenced, or at least, the portion of the offender's sentence that has a rehabilitative purpose does not qualify as part of the offender's sentence. Put another way, Judge Murphy's theory of what a sentence is cannot account for a sentence with a rehabilitative purpose qualifying as a sentence at all and a suspended sentence is a contradiction in terms rather than a disposition available to sentencing courts across North Carolina.

¶ 62      Not all sentences North Carolina law authorizes our trial courts to impose have a punitive, or primarily punitive, purpose. Our General Assembly has made express provision for rehabilitation as a purpose of sentencing under North Carolina's criminal law and for the imposition of remedial and rehabilitative sentences in our state courts. In my view, Judge Murphy's separate opinion errs in suggesting otherwise. Because I would hold that the 2020 SBM orders *did* qualify as part of

Defendant's sentence, I would hold that the trial court had subject matter jurisdiction to enter these orders at the 19 February 2020 resentencing.

> b. *An Offender Should Not Need to Preserve a Challenge to the Reasonableness of an SBM Order to Preserve It for Our Review*

¶ 63    I would like to add that I disagree with the precedent from our Supreme Court and from our Court about whether Defendant's Fourth Amendment arguments are properly before us because they were not raised first in the court below at the resentencing hearing before Judge Ridgeway. I take this opportunity to do so because the only portion of this opinion with precedential value is Part B—the Court's holding related to the facial validity of the indictments. The decision by a majority of the Court consisting of Judge Murphy and I concurring to issue a writ of certiorari per opinion is a discretionary one that has no precedential value.

¶ 64    As we observed in *State v. Dye*, 254 N.C. App. 161, 802 S.E.2d 737 (2017), "N.C. Gen. Stat. § 15A-1446(d) provides that when a defendant asserts that a 'sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law[,]' appellate review of such errors may be obtained regardless of whether an objection was made at trial." 254 N.C. App. at 168, 802 S.E.2d at 742 (quoting N.C. Gen. Stat. § 15A-1446(d)(18)). Regardless of whether one agrees that the SBM system is merely a civil regulatory enforcement regime or not, I believe it is abundantly obvious that being

required to enroll in SBM for the remainder of one's life for committing an offense defined as an aggravated offense by N.C. Gen. Stat. § 14-208.6 is part of an offender's sentence. The purpose of this portion of the sentence, in my view, is the second purpose of sentencing articulated by our General Assembly in N.C. Gen. Stat. § 15A-1340.12—protecting the public. I concede that our decision in *Dye* not only has not stood the test of time, it was inconsistent with controlling precedent from our Court when it was decided in 2017. I still think it is right. Were it not for the precedent from our Court and our Supreme Court dictating a contrary result, in this case, as in *Dye*, I would hold that "Defendant's argument was preserved, notwithstanding his failure to object in the trial court[.]" 254 N.C. App. at 168, 802 S.E.2d at 742.

## IV.  Conclusion

¶ 65        We hold that the indictments are facially valid. A majority of the Court issues a writ of certiorari per opinion. This opinion otherwise is the opinion of only one judge of the Court, but the 2020 SBM orders remain undisturbed.

AFFIRMED.

Judge TYSON concurs in result only by separate opinion.

Judge MURPHY concurs in part, concurs in result only in part, and dissents by separate opinion.

TYSON, Judge, concurring in the result only.

We all agree Defendant's indictments are sufficient and valid to support his underlying convictions. Defendant argues the trial court erred in imposing lifetime satellite-based monitoring ("SBM"). He asserts the State failed to meet its burden of proving the imposition of lifetime SBM is a reasonable search under the Fourth Amendment and he was ordered to SBM without any argument or evidence to support the reasonableness of the SBM's Fourth Amendment search. U.S. Const. amend. IV and XIV. Defendant's appeal is properly dismissed.

## I. Petition for Writ of Certiorari

The State responds and argues Defendant failed to properly preserve this issue because Defendant failed to object on any basis, constitutional or otherwise, to the imposition of lifetime SBM, did not appeal, waived appellate review, and has shown no merit or prejudice to warrant the issuance of a writ of certiorari ("PWC"). *See State v. Grundler*, 251 N.C. 177, 188-89, 111 S.E.2d 1, 9 (1959) (death penalty appeal) ("Ordinarily an order or judgment will not be set aside unless it appears that there is merit and that a different result probably will be reached by so doing."); *State v. Ricks*, 378 N.C. 737, 741, 2021-NCSC-116, ¶6-7, 862 S.E.2d 835, 838-39 (2021) (holding that certiorari is purely a discretionary writ, a defendant's petition must show merit and prejudice, and a defendant's failure to object to an SBM order at trial prevents him from raising the issue on appeal).

I agree with the State that Defendant has not carried his burden, vote to deny

Defendant's PWC and to dismiss his petition. *Grundler*, 251 N.C. at 188-89, 111 S.E.2d at 9; *Ricks*, 378 N.C. at 741, 2021-NCSC-116, ¶6-7, 862 S.E.2d at 838-39.

## II.    Appellate Rule 10

¶ 69        Rule 10 of our Rules of Appellate Procedure clearly requires a defendant to make "a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the [trial] court to make[.]" N.C. R. App. P. 10(a)(1).  Our Supreme Court has held: "It is well settled that an error, even one of constitutional magnitude, that [the] defendant does not bring to the trial court's attention is waived and will not be considered on appeal." *State v. Bell*, 359 N.C. 1, 28, 603 S.E.2d 93, 112 (2004) (death penalty appeal) (citing *State v. Wiley,* 355 N.C. 592, 615, 565 S.E.2d 22, 39 (2002), *cert. denied,* 537 U.S. 1117, 154 L.Ed.2d 795 (2003)).

¶ 70        The record clearly shows Defendant failed to make the required objection before the trial court or to asset any constitutional challenge and he has waived appellate review of this issue. *See Ricks*, 378 N.C. at 740, 2021-NCSC-116, ¶ 5, 862 S.E.2d at 838 (holding that certiorari is purely a discretionary writ and citing to N.C. R. App. P. 10(a)(1) in reviewing the imposition of lifetime SBM).  "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, *unless it has been overturned by a higher court.*"  *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (emphasis supplied).

¶ 71        As Chief Justice Frye reminded us in *Dunn v. Pate*: "[T]he Court of Appeals . . . has 'no authority to overrule decisions of [the] Supreme Court and [has] the responsibility to follow those decisions until otherwise ordered by the Supreme Court.'" 334 N.C. 115, 118, 431 S.E.2d 178,180 (1993); *see also Dunn v. Pate*, 106 N.C. App. 56, 60, 415 S.E.2d 102, 104 (quoting *Cannon v. Miller,* 313 N.C. 324, 327 S.E.2d 888 (1985)).  A judge's personal opinion or notion to the contrary is immaterial.

### III.    Appellate Rule 2

¶ 72        Defendant also requests this Court to invoke Rule 2 of the North Carolina Rules of Appellate Procedure and exercise its discretion to reach the merits of his argument. N.C. R. App. P. 2.  This argument has no merit.  "[W]e will not ordinarily consider a constitutional question not raised before the trial court, [and] Defendant cannot prevail on this issue without our invoking Rule 2, because his constitutional argument was waived." *State v. Spinks*, 277 N.C. App. 554, 571, 2021-NCCOA-218, ¶ 51, 860 S.E.2d 306, 320 (2021) (citations and quotations omitted); *see also Ricks*, 378 N.C. at 740, 2021-NCSC-116, ¶ 5, 862 S.E.2d at 838 ("An appellate court, however, may only invoke Rule 2 in exceptional circumstances when "injustice . . . appears manifest to the [c]ourt or when the case presents significant issues of importance in the public interest.") (citations and internal quotation marks omitted).  Defendant is "no different from other defendants who failed to preserve their constitutional arguments in the trial court[.]" *State v. Bishop*, 255 N.C. App. 767,

770, 805 S.E.2d 367, 370 (2017).

## IV. Appellate Rule 3

¶ 73        Contrary to the plurality opinion's assertions and notion in its footnote concerning our Rules 3 and 4 of Appellate Procedure, our Supreme Court has also held in *Ricks*, which is directly on point and binding upon this Court:

> Further, a party appealing an order rendered in a civil action must fil[e] notice of appeal with the clerk of superior court and serv[e] copies thereof upon all other parties in a timely manner. The Court of Appeals thus does not have jurisdiction to review a trial court's SBM order unless the party seeking review complies with Rule 3(a) by filing a written notice of appeal. Though the Court of Appeals may issue a writ of certiorari to review a trial court's order when the right to prosecute an appeal has been lost by failure to take timely action, the petition must show merit or that error was probably committed below[.] A *writ of certiorari is not intended as a substitute for a notice of appeal because such a practice would render meaningless the rules governing the time and manner of noticing appeals.*

*Ricks*, 378 N.C. at 740-41, 2021-NCSC-116, ¶ 6, 862 S.E.2d at 838-39 (internal citations and quotations omitted) (emphasis supplied). *See State v. Hawkins*, __ N.C. App. __, __, 2022-NCCOA-744, ¶ 34, __ S.E.2d __, __ (2022) (citation omitted).

## V. Conclusion

¶ 74        I concur with Judge Murphy in the exercise of our discretion for this Court not to invoke Rule 2 to review Defendant's unpreserved and waived argument, and his assertion of a purported constitutional violation for the first time on appeal. *Ricks*,

378 N.C. at 740, 2021-NCSC-116, ¶ 5, 862 S.E.2d at 838 (citing PWC and proper imposition of Rules of Appellate Procedure 2 and 10(a)(1) in reviewing the imposition of lifetime SBM); *Bell*, 359 N.C. at 28, 603 S.E.2d at 112; *see also* N.C. R. App. P. 2 & 10(a)(1).

¶ 75    While I vote to deny Defendant's frivolous PWC and dismiss, I concur in the result only with Judge Jackson's mandate to affirm the trial court's judgment.

MURPHY, Judge, concurring in part, concurring in result only in part, and dissenting in part.

¶ 76    As explained in more detail below, I respectfully concur with Judge Jackson in part as to the validity of the indictments, concur in result only in part as to the issuance of a petition for writ of certiorari to review the 2020 SBM Orders, and dissent in part as to the validity of the 2020 SBM Orders.

¶ 77    An indictment for a sex crime that refers to a victim by her initials is facially valid when (1) a person of common understanding would know the intent of the indictment was to charge the offender with the offense stated in the indictment and (2) the offender's constitutional rights to notice and freedom from double jeopardy are adequately protected.  Here, the use of the victim's initials in two sex offense with a child indictments, one first-degree rape indictment, and one incest indictment did not render the indictments fatally defective because a person of common understanding would know the intent of the indictments was to charge Defendant with the offenses as stated in the indictments and Defendant's constitutional rights to notice and freedom from double jeopardy were adequately protected.

¶ 78    A trial court's subject matter jurisdiction to enter a satellite-based monitoring ("SBM") order is statutorily limited.  Where a trial court purports to enter additional SBM Orders at a resentencing hearing and the original SBM Orders remain binding, it acts beyond its statutory authority and without jurisdiction, rendering the additional SBM Orders invalid and leaving the original SBM Orders in effect.

## **BACKGROUND**

¶ 79     This appeal includes a lengthy procedural history.   We summarized the

underlying facts of this case in one of Defendant's earlier appeals as follows:

> In June 1998, [D]efendant [Gregory Aldon Perkins] was
> hired by "Jane"[7] to perform computer system work for the
> Town of Albemarle.  At that time, Jane was married with
> two girls, [Katrina] and [Maria]; [D]efendant was also
> married but had no children.   Defendant and Jane
> separated from their spouses to begin dating each other.
> They married in June 2001 and subsequently moved from
> Albemarle to Apex.
>
> [Maria] testified that when she was in the third grade,
> [D]efendant began to sexually abuse her.  Defendant would
> give [Maria] a back rub before moving his hands beneath
> her clothes.   The sexual abuse included [D]efendant
> digitally penetrating her vagina and performing oral sex on
> her.  Defendant also taught [Maria] how to perform oral
> sex on him.  According to [Maria], the abuse occurred as
> many as four times a week.
>
> In the summer before she began the sixth grade,
> [D]efendant had vaginal intercourse with [Maria].
> Defendant offered [Maria] a "deal" by which she could
> receive things such as new clothes, no curfew restrictions,
> or spending more time with friends if she cooperated with
> his requests for sex.  When [Maria] was in the ninth grade,
> [D]efendant convinced Jane to let [Maria] start taking
> birth control.  [Maria] reiterated that [D]efendant would
> typically abuse her about four times a week.
>
> In 2008, [D]efendant announced that he was unhappy with
> his marriage to Jane and wanted to move out of the house.

---

[7] I use pseudonyms for all relevant persons throughout this opinion to protect the
identity of the juveniles and for ease of reading.

> Defendant's last sexual encounter with [Maria] occurred sometime between Christmas 2008 and January 2009 when he moved out.
>
> In October 2009, [Maria] became upset while looking at pictures of accused sexual offenders in a newspaper and told her boyfriend that [D]efendant had sexually abused her. [Maria] then told her sister, [Katrina], and her mother, Jane, that [D]efendant had abused her "for a long time." Jane called the Apex Police Department.
>
> The Apex Police interviewed [Maria], [Katrina], Jane, and [Maria's] boyfriend. They also interviewed two childhood friends of [Maria] who, years before, had been told by [Maria] that she was being sexually abused by [D]efendant. Mental health counselors determined that [Maria] was depressed and exhibited symptoms of post-traumatic stress disorder associated with long-term child sexual abuse. When interviewed by the Apex Police, [D]efendant denied [Maria's] allegations and stated that [Maria] created the allegations against him because she did not want [D]efendant to reconcile with Jane.

*State v. Perkins*, COA13-1352, 235 N.C. App. 425, 763 S.E.2d 928, 2014 WL 3824261, at *2 (2014) (unpublished) ("*Perkins I*"), *disc. rev. denied*, (further citation omitted) (2015).[8] On 5 January 2010, Defendant was indicted, *inter alia*, for two counts of

---

[8] To further protect the minor and consistent with our evolving practices regarding protection of innocent persons, I exercise my discretion to prevent the unnecessary inclusion of potentially identifying information regarding the victim in this case and her family. I note that this exercise of discretion, an inherent authority of our Court, is consistent with changes in the protection of victims' rights as reflected in Article I, § 37 (titled Rights of Victims of Crime) of our State's Constitution (commonly known as Marsy's Law), as enabled by N.C. Session Law 2019-216, and is in furtherance of the procedures adopted by our Supreme Court's 2019 amendments to Rule 42 of the North Carolina Rules of Appellate Procedure. N.C. Const. art. I, § 37; *see* 2019 S.L. 216; N.C. R. App. P. 42 (2019).

first-degree sexual offense with a child (one count by digital vaginal penetration and one count by cunnilingus), one count of indecent liberties with a child, one count of first-degree rape of a child, and one count of incest.

¶ 80     Defendant's first trial began in November 2010. On 29 November 2010, a mistrial was declared after the jury failed to reach a unanimous verdict. Defendant was retried on 19 September 2011. The jury found Defendant guilty of one count of taking indecent liberties with a child but was unable to reach unanimous verdicts on the other charges. As a result, the trial court declared a mistrial for the remaining charges and sentenced Defendant on the one indecent liberties conviction. Defendant received, as a Prior Record Level I offender, an active sentence of 16 to 20 months.

¶ 81     Defendant did not timely appeal the indecent liberties conviction. As the only remaining avenue to appellate review, Defendant filed a *Petition for Writ of Certiorari* with this Court for the purpose of reviewing the judgment entered upon his indecent liberties conviction. We allowed his petition and found no error. *State v. Perkins*, COA15-5, 243 N.C. App. 208, 778 S.E.2d 475, 2015 WL 5123912 (2015) (unpublished) ("*Perkins II*"), *disc. rev. denied, appeal dismissed*, (further citation omitted) (2015).

¶ 82     In 2012, Defendant was retried for the remaining charges: two counts of first-degree sexual offense with a child, one count of first-degree rape, and one count of incest. On 4 December 2012, the jury found Defendant guilty on these charges. During sentencing, Defense Counsel stipulated to Defendant being sentenced as a

Prior Record Level II offender, with his indecent liberties conviction from the second trial listed on the prior record level worksheet as his only prior conviction. Defendant received three consecutive active sentences of 276 to 341 months for the two first-degree sexual offense with a child convictions and the first-degree rape conviction. Defendant further received a consecutive sentence of 19 to 23 months for the incest conviction. Defendant was also ordered to register as a sex offender for his natural life and to enroll in SBM for his natural life upon his release from imprisonment.

¶ 83 Defendant timely appealed the judgments from his third trial, arguing the trial court erred (1) "in ruling that Defendant's prior [indecent liberties with a child] conviction was admissible"; (2) "in using Defendant's prior [indecent liberties with a child conviction] to calculate his prior record level"; and (3) "by failing to intervene *ex mero motu* during the prosecutor's arguments during sentencing." *Perkins I*. We found no error. *Id*.

¶ 84 On 30 December 2016, Defendant filed a motion for appropriate relief ("MAR"), arguing he received ineffective assistance of counsel at his third trial when Defense Counsel stipulated to sentencing Defendant as a Prior Record Level II offender. Defendant further argued he should be resentenced on the two first-degree sexual offense with a child convictions, the first-degree rape conviction, and the incest conviction as a Prior Record Level I offender. The trial court denied Defendant's MAR.

*MURPHY, J., Concurring in Part; Concurring in Result Only in Part; and Dissenting in Part*

¶ 85    Defendant subsequently filed a *Petition for Writ of Certiorari* with this Court seeking review of the trial court's order denying his MAR.  We allowed the petition, vacated the trial court's order denying the MAR, and remanded the case for reconsideration in light of our holdings in *State v. West*, 180 N.C. App. 664, 638 S.E.2d 508 (2006), *disc. rev. denied, appeal dismissed*, 361 N.C. 368, 644 S.E.2d 562 (2007), and *State v. Watlington*, 234 N.C. App. 601, 759 S.E.2d 392, *disc. rev. denied*, 367 N.C. 791, 766 S.E.2d 644 (2014).  On remand, the trial court "[found] the stipulation to be erroneous" but did "not find that the stipulation by trial counsel [rose] to the level of ineffective assistance of counsel[.]"  As a result, the trial court ordered a new sentencing hearing.

¶ 86    On 19 February 2020, Defendant was resentenced as a Prior Record Level I offender for the two first-degree sexual offense with a child convictions, the first-degree rape conviction, and the incest conviction.  Pursuant to the trial court's judgments dated 19 February 2020, Defendant received three consecutive active sentences of 240 to 297 months each for the two first-degree sexual offense with a child convictions and the first-degree rape conviction.  Defendant further received a consecutive sentence of 16 to 23 months for the incest conviction.  The trial court further ordered that, "upon release from imprisonment, [Defendant] shall enroll in [SBM] for his[] natural life[.]"

¶ 87    On 2 March 2020, Defendant timely filed a written *Notice of Appeal*.  On 14

December 2020, Defendant filed a *Petition for Writ of Certiorari*, seeking our review of the order requiring him to enroll in lifetime SBM in the event we conclude his written *Notice of Appeal* failed to comply with Rule 3 of our Rules of Appellate Procedure for appeal in a civil matter. In my discretion, I join Judge Jackson in allowing Defendant's *Petition for Writ of Certiorari* to review the 2020 SBM Orders.

## ANALYSIS

¶ 88    On appeal, Defendant (A) challenges the facial validity of the indictments charging him with first-degree sexual offense with a child, first-degree rape, and incest; (B) argues the trial court erred by imposing lifetime SBM because the findings do not support it; and (C) argues the trial court erred by imposing lifetime SBM because the trial court did not hold a hearing to determine if lifetime SBM was a reasonable Fourth Amendment search. After we allowed Defendant's motion for supplemental briefing on 24 May 2021, Defendant filed a supplemental brief arguing, alternatively, he "received statutory ineffective assistance of counsel when his resentencing lawyer failed to object to the imposition of lifetime [SBM]."

### A. Sufficiency of the Indictments

¶ 89    First, Defendant argues that, because the sex offense with a child indictments, first-degree rape indictment, and incest indictment referenced the victim only by her initials and not her full name, they were facially defective and the defect rendered the trial court without subject matter jurisdiction to enter judgment on these

convictions against Defendant. "[W]e review the sufficiency of an indictment *de novo.*" *State v. McKoy*, 196 N.C. App. 650, 652, 675 S.E.2d 406, 409, *disc. rev. denied, appeal dismissed,* 363 N.C. 586, 683 S.E.2d 215 (2009).

¶ 90        Defendant failed to object to the sufficiency of the indictments at trial and raises this argument for the first time on appeal. Despite this, the issue is preserved because "[t]he issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court *sua sponte.*" *State v. Harwood*, 243 N.C. App. 425, 427-28, 777 S.E.2d 116, 118 (2015). Since indictments confer subject matter jurisdiction on the trial court, Defendant's argument may be raised for the first time on appeal. *See State v. Rogers*, 256 N.C. App. 328, 337, 808 S.E.2d 156, 162 (2017) ("In criminal cases, a valid indictment gives the trial court its subject matter jurisdiction over the case.").

¶ 91        Generally, "[a] criminal pleading, such as an [indictment], is fatally defective if it 'fails to state some essential and necessary element of the offense of which the defendant is found guilty.'" *State v. Ellis*, 368 N.C. 342, 344, 776 S.E.2d 675, 677 (2015) (quoting *State v. Gregory*, 223 N.C. 415, 418, 27 S.E.2d 140, 142 (1943)).

> [I]t is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime.

*State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E.2d 719, 731 (1981).

¶ 92　　　　We previously determined the use of initials to identify a victim is sufficient for a second-degree rape and second-degree sexual offense indictment. *See McKoy*, 196 N.C. App. at 654, 675 S.E.2d at 410. Defendant argues *McKoy* is no longer binding after our Supreme Court's opinion in *State v. White*, 372 N.C. 248, 827 S.E.2d 80 (2019). Defendant asks us to extend the holding of *White* as "the logic of *White* undercuts the continued viability of *McKoy*."

¶ 93　　　　We recently addressed this same argument in *State v. Sechrest* and held:

> Nowhere in *White* does our Supreme Court explicitly or implicitly overrule our decision in *McKoy*. Additionally, *White* does not address the issue of naming a victim solely by their initials since the indictment there referenced the victim as "Victim #1." *McKoy* remains our binding precedent and "the use of initials to identify a victim requires us to employ the *Coker* and *Lowe* tests to determine if the indictment was sufficient to impart subject matter jurisdiction."

*State v. Sechrest*, 277 N.C. App. 372, 2021-NCCOA-204, ¶ 11 (quoting *McKoy*, 196 N.C. App. at 658, 675 S.E.2d at 412) (marks omitted).

## 1. *Coker*

¶ 94　　　　In order to determine if the lack of the victim's full name renders an indictment fatally defective, *Coker* requires us to inquire whether a person of common understanding would know the intent of the indictments was to charge Defendant with the offense. *State v. Coker*, 312 N.C. 432, 435, 323 S.E.2d 343, 346 (1984).

### a. First-Degree Sexual Offenses

¶ 95          Defendant was indicted for two counts of first-degree sexual offense with a child: one count by digital vaginal penetration and one count by cunnilingus. Defendant's indictment for first-degree sexual offense with a child by digital vaginal penetration alleges:

> The Grand Jurors for the State upon their oath present that between [1 November 2002] and [30 November 2002], in Wake County, [Defendant] unlawfully, willfully and feloniously did engage in a sex offense with [MXX (DOB: XX/XX/19XX)⁹], a child under the age of 13 years, to wit: digital-vaginal penetration. At the time of the offense, [Defendant] was at least 12 years old and at least 4 years older than [MXX]. This act was done in violation of N.C.G.S. § 14-27.4(a)(1).

Similarly, Defendant's indictment for first-degree sexual offense with a child by cunnilingus alleges:

> The Grand Jurors for the State upon their oath present that between [1 April 2003] and [31 May 2003], in Wake County, [Defendant] unlawfully, willfully and feloniously did engage in a sex offense, to wit: cunnilingus, with [MXX DOB: XX/XX/19XX)], a child under the age of 13 years. At the time of the offense, [Defendant] was at least 12 years old and at least 4 years older than [MXX][.] This act was done in violation of N.C.G.S. § 14-27.4(a)(1).

¶ 96          At the time of the offenses, N.C.G.S. § 14-27.4(a)(1) provided:

> (a) A person is guilty of a sexual offense in the first degree

---

[9] The juvenile's date of birth is redacted throughout this opinion to protect her identity.

> if the person engages in a sexual act:
>
> (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]

N.C.G.S. § 14-27.4(a)(1) (2002).[10]  Both indictments tracked the statutory language of N.C.G.S. § 14-27.4.  *Id.*  While the statute defining a sexual offense in the first degree requires the offense to be with "a child under the age of 13 years[,]" *id.*, "the indictment charging this offense 'does not need to state the victim's full name, nor does it need to add periods after each letter in initials in order to accomplish the common sense understanding that initials represent a person.'"  *Sechrest*, 2021-NCCOA-204 at ¶ 13 (quoting *McKoy*, 196 N.C. App. at 654, 675 S.E.2d at 410) (marks omitted).  A person of common understanding would know the intent of the indictments was to charge Defendant with first-degree sexual offense with a child. The *Coker* prong of *McKoy* is satisfied for these indictments.

**b. First-Degree Rape**

Defendant's indictment for first-degree rape alleges:

> The Grand Jurors for the State upon their oath present that from [1 June 2004] through [30 June 2004], in Wake County, [Defendant] unlawfully, willfully and feloniously did engage in vaginal intercourse with [MXX (DOB:

---

[10] N.C.G.S. § 14-27.4(a)(1) was recodified as N.C.G.S. § 14-27.26, effective 1 December 2015.  As the dates of these offenses were from 1 November 2002 to 30 November 2002 and 1 April 2003 to 31 May 2003, I use the then-existing version of the statute, N.C.G.S. § 14-27.4(a)(1), which was effective from 1 October 1994 until 30 November 2015.

> XX/XX/19XX)], a child under the age of 13 years. At the time of the offense, [Defendant] was at least 12 years old and at least 4 years older than [MXX]. This was done in violation of [N.C.G.S.] § 14-27.2[(a)].

¶ 98 At the time of the offense, N.C.G.S. § 14-27.2(a) provided:

> (a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

> (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]

¶ 99 N.C.G.S. § 14-27.2(a)(1) (2004).[11] The indictment tracked the statutory language of N.C.G.S. § 14-27.2. *Id.* While the statute defining rape in the first degree requires the offense to be with "a child under the age of 13 years[,]" *id.*, "the indictment charging this offense 'does not need to state the victim's full name, nor does it need to add periods after each letter in initials in order to accomplish the common sense understanding that initials represent a person.'" *Sechrest*, 2021-NCCOA-204 at ¶ 13 (quoting *McKoy*, 196 N.C. App. at 654, 675 S.E.2d at 410). A person of common understanding would know the intent of the indictment was to charge Defendant with first-degree rape. The *Coker* prong of *McKoy* is satisfied for this indictment as well.

---

[11] N.C.G.S. § 14-27.2 was recodified as N.C.G.S. § 14-27.21, effective 1 December 2015. As the dates of the offense were between 1 June 2004 to 30 June 2004, I use the then-existing version of the statute, N.C.G.S. § 14-27.2, which was effective until 30 November 2015.

*MURPHY, J., Concurring in Part; Concurring in Result Only in Part; and Dissenting in Part*

**c. Incest**

¶ 100      Defendant's indictment for incest alleges:

> The Grand Jurors for the State upon their oath present that on or about [1 December 2008] through [31 December 2008], in Wake County, [Defendant] unlawfully, willfully and feloniously did have carnal intercourse with [MXX (DOB: XX/XX/19XX)], who is [Defendant's] stepchild and [Defendant] was aware that he was [MXX's] stepfather. This was done in violation of N.C.G.S. § 14-178.

¶ 101      N.C.G.S. § 14-178 provides, *inter alia*:

> (a) Offense. – A person commits the offense of incest if the person engages in carnal intercourse with the person's . . . parent or child or stepchild or legally adopted child . . . .

N.C.G.S. § 14-178 (2019).[12] The indictment tracked the statutory language of N.C.G.S. § 14-178. *Id.* While the statute defining incest requires the offense to be with "a parent or child or stepchild or legally adopted child[,]" *id.*, I see no reason to differentiate the use of initials here from those in other sex offenses[13] where "the indictment charging this offense 'does not need to state the victim's full name, nor does it need to add periods after each letter in initials in order to accomplish the common sense understanding that initials represent a person.'" *Sechrest*, 2021-

---

[12] The language of N.C.G.S. § 14-178 has remained the same since 1 December 2002. As the dates of this offense were between 1 December 2008 to 31 December 2008, I use the now-existing version of N.C.G.S. § 14-178.

[13] I note that this reference to incest as a "sex offense" is merely to address Defendant's only argument on appeal regarding jurisdiction and assume, without deciding, that incest is a "sex offense" subject to the requirements of N.C.G.S. § 15-144.2(b).

NCCOA-204 at ¶ 13 (quoting *McKoy*, 196 N.C. App. at 654, 675 S.E.2d at 410). A person of common understanding would know the intent of the indictment was to charge Defendant with incest. The *Coker* prong of *McKoy* is satisfied for this indictment.

¶ 102        Defendant's indictments for first-degree sexual offenses with a child, first-degree rape, and incest tracked the statutory language of the applicable statutes and a person of common understanding would know the intent of each indictment. Each of Defendant's indictments satisfies the *Coker* prong of the *McKoy* analysis.

## 2. *Lowe*

¶ 103        In order to determine if the lack of the victim's full name renders the indictments fatally defective, *Lowe* requires us to inquire whether Defendant's constitutional rights to notice and freedom from double jeopardy were adequately protected by the use of the victim's initials. *See State v. Lowe*, 295 N.C. 596, 603, 247 S.E.2d 878, 883 (1978).

¶ 104        The Record demonstrates Defendant had notice of the identity of the victim. The indictments alleged the victim is Defendant's stepchild and Defendant was aware that he was the victim's stepfather. The indictments also contained the victim's date of birth, a unique piece of information that enabled Defendant to distinguish between the named victim and all other people in conjunction with the victim's initials. Further, Defendant makes no argument on appeal he had difficulty preparing his

case because of the use of "[MXX]" instead of the victim's full name. *See McKoy*, 196 N.C. App. at 657-58, 675 S.E.2d at 412; *Sechrest*, 2021-NCCOA-204 at ¶ 14. In addition, the victim testified at Defendant's third trial and identified herself by her full name in open court. *See McKoy*, 196 N.C. App. at 658, 675 S.E.2d at 412; *Sechrest*, 2021-NCCOA-204 at ¶ 14. There is no possibility that Defendant was confused regarding the identity of the victim. The use of "[MXX]," together with the date of birth, in the indictments provided Defendant with sufficient notice to prepare his defense and protect himself against future prosecutions for the same crimes.

**3. Conclusion**

¶ 105        The indictments charging Defendant with first-degree sexual offenses with a child, first-degree rape, and incest are sufficient to meet the analysis emphasized by *McKoy* as outlined in *Coker* and *Lowe*. The use of the victim's initials and her date of birth in the indictments did not render them fatally defective, and the trial court had subject matter jurisdiction over these charges.

**B. 2020 SBM Orders**

¶ 106        Next, Defendant challenges the 2020 SBM Orders. Defendant filed a *Petition for Writ of Certiorari* seeking our review of the merits of his SBM arguments. Defendant argues the trial court erred by finding he is a recidivist and by finding that incest is an aggravated offense. He further contends that if he is not a recidivist and incest is not an aggravated offense, then it was a violation of N.C.G.S. § 14-208.40A(c)

for the trial court to order lifetime enrollment in SBM.

¶ 107        Defendant also argues the trial court erred in imposing lifetime SBM because the State failed to meet its burden of proving that the imposition of lifetime SBM amounted to a reasonable search under the Fourth Amendment and lifetime SBM was ordered without any argument or evidence regarding the reasonableness of the Fourth Amendment search effected by SBM.

¶ 108        Finally, on 24 May 2021, we allowed Defendant's motion for leave to file a supplemental brief based on our decision in *Spinks*, where we held an indigent defendant has a statutory right to effective assistance of counsel in an SBM hearing. *State v. Spinks*, 277 N.C. App. 554, 2021-NCCOA-218, ¶ 60.  In his supplemental brief, Defendant argues his attorney's failure to object to the imposition of lifetime SBM rises to the level of ineffective assistance of counsel, which deprived Defendant of a fair hearing because the State did not put forth any evidence in support of the 2020 SBM Orders and no hearing was held.

¶ 109        Defendant filed a *Petition for Writ of Certiorari* requesting our review of the 2020 SBM Orders, which I join Judge Jackson in exercising our discretion to allow, albeit for a separate reason.  However, because I conclude that the trial court lacked subject matter jurisdiction to enter the 2020 SBM Orders, I would vacate them, rendering Defendant's arguments concerning the 2020 SBM Orders moot and leaving the 2012 SBM Orders in effect.

*MURPHY, J., Concurring in Part; Concurring in Result Only in Part; and Dissenting in Part*

¶ 110      Although no party raises the issue on appeal, my review of the Record leads me to conclude that the trial court lacked jurisdiction to enter the 2020 SBM Orders. As a result, I would vacate the 2020 SBM Orders and need not address Defendant's substantive challenges to the 2020 SBM Orders.

¶ 111      "It is well-established that the issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court *sua sponte*." *State v. Webber*, 190 N.C. App. 649, 650, 660 S.E.2d 621, 622 (2008).  "The existence of subject matter jurisdiction is a matter of law and cannot be conferred upon a court by consent."  *State v. Williams*, 368 N.C. 620, 628, 781 S.E.2d 268, 274 (2016) (marks and citation omitted).  "[W]hether a trial court has subject matter jurisdiction is a question of law, which is reviewable on appeal de novo."  *State v. Black*, 197 N.C. App. 373, 377, 677 S.E.2d 199, 202 (2009).  We have stated that

> jurisdiction is the legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it.  The court must have subject matter jurisdiction, or jurisdiction over the nature of the case and the type of relief sought, in order to decide a case. A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity.  The General Assembly within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State.  Where jurisdiction is statutory and the [General Assembly] requires the [c]ourt to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the [c]ourt to certain limitations, an act of the [c]ourt beyond these limits is in excess of its jurisdiction.

*State v. Clayton*, 206 N.C. App. 300, 303-04, 697 S.E.2d 428, 431 (2010) (marks and citations omitted).

¶ 112      In *State v. Clayton*, we held that a trial court lacked jurisdiction to enroll a defendant in SBM where the trial court had previously held an SBM hearing and determined that the defendant was not required to enroll in SBM. *Id.* at 305, 697 S.E.2d at 432. There, the defendant was convicted of two counts of indecent liberties and was placed on probation. *Id.* at 301, 697 S.E.2d at 430. Following these convictions, the trial court determined that the defendant was not required to enroll in SBM. *Id.* At a subsequent probation violation hearing, the trial court reconsidered SBM and ordered that the defendant enroll in SBM for 10 years. *Id.* at 301-02, 697 S.E.2d at 430. The defendant appealed from the second SBM order only. *Id.* at 305, 697 S.E.2d at 432. In light of the SBM procedures set forth in N.C.G.S. § 14-208.40A and N.C.G.S. § 14-208.40B, we held that "[t]he trial court did not have any basis to conduct another SBM hearing, where it had already held an SBM hearing based upon the same reportable convictions . . . ." *Id.* We concluded that "the trial court did not have jurisdiction to conduct the [later] SBM hearing or to order [the] defendant to enroll in SBM for a period of 10 years. The SBM statutes do not provide for reassessment of [the] defendant's SBM eligibility based on the same reportable conviction, after the initial SBM determination is made based on that conviction." *Id.* at 305-06, 697 S.E.2d at 432 (marks and citation omitted). We then "vacate[d] the

trial court's order enrolling [the] defendant in SBM for a period of 10 years" and determined that we did not "need [to] address [the] defendant's remaining arguments challenging the trial court's enrollment of [the] defendant in SBM." *Id.* at 306, 697 S.E.2d at 433.

¶ 113        We have applied *Clayton* in a similar factual scenario to the one *sub judice* in our prior unpublished decision *State v. Streater,* COA 10-740, 209 N.C. App. 756, 710 S.E.2d 707, 2011 WL 705168 (2011) (unpublished) ("*Streater II*"). In *Streater II*, the defendant was resentenced in 2010 for a 2008 conviction of first-degree rape after we remanded the 2008 sentence for a new sentencing hearing in an earlier appeal ("*Streater I*"). *Id.* at *1; *see also State v. Streater,* 197 N.C. App. 632, 634, 678 S.E.2d 367, 370, *disc. rev. denied*, 363 N.C. 661, 687 S.E.2d 293 (2009). The 2008 conviction had resulted in the entry of an SBM order. *Streater II* at *1 n.2. In *Streater I*, the defendant did not challenge the 2008 SBM order and we did not rule on it. *Id.*; *see also Streater I*, 197 N.C. App. 632, 678 S.E.2d 367. Nonetheless, the trial court entered a new SBM order at the 2010 resentencing. *Streater II* at *1. On appeal from the 2010 resentencing, we held that there was no indication that the 2008 SBM order was no longer in effect, and, relying on *Clayton*, concluded that "the trial court was without jurisdiction to again direct [the] [d]efendant to register and enroll in the SBM program." *Id.* at *3. Ultimately, we vacated the trial court's 2010 SBM order and held the 2008 SBM order was still in effect, as the 2008 order "remain[ed]

unchallenged and unreversed such that the trial court was without jurisdiction to again require [the] [d]efendant to register as a sex offender and enroll in SBM in 2010." *Id.* at *5. Although *Streater II* is unpublished, I find then-Judge, now-former Chief Justice, Beasley's reasoning persuasive and adopt the case here.

¶ 114 Like the trial court in *Streater II* and *Clayton*, here, the trial court lacked jurisdiction to enter the 2020 SBM Orders. In his second trial, Defendant was convicted of one count of indecent liberties with a child on 29 September 2011, while a mistrial was declared for the remaining charges. At a subsequent hearing, after receiving a risk assessment for Defendant, the trial court ultimately concluded that Defendant "[did] not require the highest possible level of supervision and monitoring and shall not [enroll] in [SBM]" for this conviction. In 2012, following his third trial, Defendant was convicted of two counts of first-degree sexual offense with a child under the age of thirteen, one count of first-degree rape with a child under the age of thirteen, and one count of incest. Immediately after trial, the trial court entered orders requiring Defendant "[to] enroll in [SBM] for his[] natural life, unless monitoring is terminated pursuant to [N.C.G.S. §] 14-208.43" for each conviction. Although Defendant appealed from his second and third trials, he did not raise any issues related to SBM, and we found no error in each appeal. *See Perkins I*; *Perkins II*.

¶ 115 Additionally, although Defendant filed an MAR in 2016, he only contended

that he received ineffective assistance of counsel due to his trial attorney in the third trial erroneously stipulating to a Prior Record Level II.  Nowhere in his MAR did he challenge the 2012 SBM Orders.  The trial court initially denied this MAR, but we allowed Defendant's petition for writ of certiorari for the limited purpose of vacating the trial court's order that denied the MAR and remanding for reconsideration of the MAR in light of two cases.  On remand, the trial court granted a new sentencing hearing, like we did in *Streater I*, stating:

> [T]he [c]ourt finds the [MAR] to have merit in regard to []
> Defendant's prior record level for felony sentencing.  While
> the [c]ourt does not find that the stipulation by trial
> counsel rises to the level of ineffective assistance of counsel,
> the [c]ourt does find the stipulation to be erroneous and,
> therefore, [] *Defendant's motion for a new sentencing
> hearing is GRANTED.*

(Emphasis added).  Following the trial court's resentencing hearing in 2020, the trial court entered an order that indicated "Defendant's [MAR] is granted in part in regard to [] Defendant's prior record level for felony sentencing.  Thus, the *sentence* imposed by the Honorable Judge Gessner on 12/04/2012 is vacated and [] Defendant is resentenced."  (Emphasis added).  The trial court then entered new judgments along with new SBM and sex offender registration orders; however, the 2020 SBM Orders were entered without jurisdiction.

¶ 116        The trial court's MAR order remanded for a new sentencing hearing, and, following the new sentencing hearing, the trial court vacated Defendant's *sentence*

from the convictions at the third trial. I note that Defendant did not challenge the 2012 SBM Orders from the third trial in his prior appeal or his MAR, and the trial court did not address the 2012 SBM Orders in any of its orders. As SBM is not a criminal sentence resulting from criminal judgment, but is instead a "civil, regulatory scheme," I conclude the trial court did not vacate the 2012 SBM Orders by vacating Defendant's sentence. *See State v. Grady*, 372 N.C. 509, 543, 831 S.E.2d 542, 567 (2019) (acknowledging that "the SBM program is not a form of criminal punishment, but rather a 'civil, regulatory scheme'"); *State v. Singleton*, 201 N.C. App. 620, 625, 689 S.E.2d 562, 565 (2010) ("[T]he SBM determination hearing has no effect whatsoever upon the defendant's prior criminal convictions or sentencing and is not a part of any 'criminal proceedings' or 'criminal prosecution' of the defendant."); N.C.G.S. § 14-208.42 (2012) (emphasis added) ("[W]hen an offender is required to enroll in [SBM] pursuant to [N.C.G.S. §] 14-208.40A or [N.C.G.S. §] 14-208.40B, *upon completion of the offender's sentence* and any term of parole, post-release supervision, intermediate punishment, or supervised probation that follows the sentence, the offender shall continue to be enrolled in the [SBM] program for the period required by [N.C.G.S. §] 14-208.40A or [N.C.G.S. §] 14-208.40B unless the requirement that the person enroll in a[n] [SBM] program is terminated pursuant to [N.C.G.S. §] 14-208.43."); *see generally Streater II*.

I have found nothing in the Record indicating the trial court vacated the 2012

SBM Orders, and there is nothing to suggest either party presented any arguments to the trial court related to the validity of the 2012 SBM Orders. In fact, Defendant's attorney at the resentencing hearing appears to have expected the 2012 SBM Orders to remain in effect following Defendant's resentencing:

> If [Defendant] were to be released after serving the maximum on [the Defendant's requested sentence], he would be over 60 years old. He would still have to undergo five years of intensive post-release supervision as well as be *subject to lifetime [SBM] and sex offender registration that this [c]ourt has already ordered* for all of the rest of his natural life.

(Emphasis added). Since the 2012 SBM Orders were still in effect at the time of Defendant's resentencing, like in *Streater II*, I conclude the trial court's purported SBM orders entered at the resentencing hearing were entered without jurisdiction. As stated in *Clayton*, "[t]he SBM statutes do not provide for reassessment of [a] defendant's SBM eligibility based on the same reportable conviction, after the initial SBM determination is made based on that conviction." *Clayton*, 206 N.C. App. at 305-06, 697 S.E.2d at 432. This is true of both the current SBM statutes and those in place at the time of Defendant's 2012 sentencing. *See generally* N.C.G.S. § 14-208.40A (2012); N.C.G.S. § 14-208.40B (2012); N.C.G.S. § 14-208.40A (2020); N.C.G.S. § 14-208.40B (2020).

¶ 118        Mirroring our conclusions in *Clayton* and *Streater II*, I conclude that the trial court acted beyond its statutory authority and, thus, without jurisdiction when it

entered its additional 2020 SBM Orders at the resentencing hearing because the 2012 SBM Orders remained in effect. As a result, I would vacate the trial court's 2020 SBM Orders and emphasize that Defendant is still required to comply with the 2012 SBM Orders.

¶ 119 Determining the 2020 SBM Orders should be vacated, Defendant's challenges on appeal based upon the entry of the 2020 SBM Orders and the ineffective assistance of counsel regarding the 2020 SBM Orders are moot, and I would dismiss this portion of Defendant's appeal. Furthermore, in my discretion, I decline to invoke Rule 2 or treat Defendant's appeal as a petition for writ of certiorari to review Defendant's 2012 SBM Orders.

## **CONCLUSION**

¶ 120 The use of the victim's initials in all four indictments did not render the indictments fatally defective. The trial court had subject matter jurisdiction over the charges of first-degree sexual offense with a child by digital vaginal penetration, first-degree sexual offense with a child by cunnilingus, first-degree rape, and incest.

¶ 121 The trial court acted without jurisdiction when it purported to enter the new 2020 SBM Orders following the resentencing hearing, as the 2012 SBM Orders still were, and are, in effect. As a result, I would vacate the trial court's 2020 SBM Orders and dismiss the portion of Defendant's appeal substantively challenging the 2020 SBM Orders and the efficacy of his counsel in relation to the 2020 SBM Orders.

*MURPHY, J., Concurring in Part; Concurring in Result Only in Part; and Dissenting in Part*

¶ 122        As a result, I respectfully concur with Judge Jackson in part as to the validity of the indictments, concur in result only in part as to the issuance of a petition for writ of certiorari to review the 2020 SBM Orders, and dissent in part as to the validity of the 2020 SBM Orders.